Original
No. 83-322

<span style="font-variant: small-caps">Eshleman's Case</span>

January 2, 1985

2

*Harold W. Perkins*, of Concord, as Chairman of the Committee on Professional Conduct, by brief and orally, for the committee.

*Peter F. Kearns*, of Exeter, orally for the respondent, waiving brief.

BATCHELDER, J. On July 28, 1983, the Committee on Professional Conduct, by its Chairman, Harold W. Perkins, filed a petition with this court seeking the suspension of Maris H. Eshleman from the practice of law in this State. Upon recommendation of the Committee on Professional Conduct, we suspended Eshleman on August 29, 1983, from the practice of law, pursuant to Supreme Court Rule 37(13)(d), and ordered him to show cause by September 30, 1983, why the suspension should not be made permanent. Eshleman responded to the allegations in the petition on September 30, 1983. On October 6, 1983, Eshleman offered his resignation, which we rejected on October 19, 1983. After a prehearing conference in April 1984, the parties, in May 1984, stipulated to the facts of this case. The question before the court is what discipline should be imposed upon the respondent.

The facts as agreed by the parties are, in significant part, as follows:

> 1) That Eshleman maintained inadequate client trust account records during 1981, 1982, and 1983 in violation of Disciplinary Rule (DR) 9-102(B)(3) of the Code of Professional Responsibility;

> 2) That since at least March 1982 Eshleman has been out of trust in violation of DR 9-102(A) and has been financially unable to complete an audit such that the full extent of shortages is unknown, but in all probability may exceed $70,000;

3) That Eshleman's 1982 Annual Trust Accounting Compliance Certificate failed to disclose that he was out of trust; and that he had executed the Lawyer Certificate certifying that he had read DR 9-102 and Supreme Court Rule 37(7) and that he was in compliance with them;

4) That Eshleman has not filed an Annual Trust Account Certificate which was due on June 1, 1983;

5) That on May 31, 1983, Eshleman falsely represented under oath to a hearing panel of the Committee on Professional Conduct that he had raised personal funds and corrected trust fund shortages;

6) That Eshleman had failed to inform the Committee on Professional Conduct or the Supreme Court or his attorneys that he had been arrested on September 28, 1983 on a grand theft charge in Florida in connection with a check he drew against insufficient funds;

7) That on September 30, 1983, Eshleman falsely represented to the Supreme Court, the Committee on Professional Conduct and his attorneys that certain property in Florida was about to be sold and that the proceeds would be sufficient to meet his obligations to a client, the Summit at Four Seasons;

8) That the misrepresentations and falsities in 5, 6, and 7 above were retracted or corrected in the course of the official proceedings before it became manifest that any such falsification was or would be exposed and before it substantially affected the proceedings.

The parties' stipulation also included respondent's agreement that any final order of this court shall include a requirement that, as a condition of consideration for readmission to the bar, at any time, Eshleman shall be required: a) to provide satisfactory proof that all sums which are due clients from his trust funds have been paid in full; and b) to reimburse the Committee on Professional Conduct in full for all sums expended by the committee in the investigation and prosecution of this matter, said sum as of May 10, 1984, having been $1,920.

The Committee on Professional Conduct seeks disbarment of the respondent. In connection with that request, the committee urges that this court clearly distinguish between disciplinary measures of disbarment and indefinite suspension. The distinction between disbarment and suspension sought by the committee is a meaningful and useful one. Clearly, this court is empowered to

impose either sanction as necessary to protect the public and the integrity of the legal profession. RSA 311:8; SUP. CT. R. 37(13)(f); *see, e.g., Delano's Case,* 58 N.H. 5 (1876); *Nardi's Case,* 122 N.H. 277, 278, 444 A.2d 512, 512–14 (1982) (attorney removed from office or disbarred); *Wholey's Case,* 110 N.H. 449, 270 A.2d 609 (1970) (attorney suspended for six months); *Mussman's Case,* 111 N.H. 402, 412, 286 A.2d 614, 620 (1971) (attorney suspended until further order of this court, provided further that no such request for reinstatement be made for three years from the date of suspension).

██ The term "disbarment" means the termination of an attorney's right to practice law in the State and an automatic expulsion from membership in the State's bar. *See In re Unification of the New Hampshire Bar,* 109 N.H. 260, 248 A.2d 709 (1968). "Suspension" means an interruption of an attorney's right to practice law in the State. A suspended attorney is subject to compliance with all terms and conditions set forth in the suspension order and applicable Supreme Court Rules. Suspensions carry no implication concerning bar association membership.

██ The law of this State regarding misuse of clients' funds and misrepresentation is well established. "The misappropriation or embezzlement of clients' funds by an attorney demonstrates such lack of common honesty as to clearly justify an attorney's disbarment." *Harrington's Case,* 100 N.H. 243, 244, 123 A.2d 396, 396 (1956) (citing *Delano's Case,* 58 N.H. 5 (1876)). "It has long been established that 'any use of the client's money by the attorney for his own advantage is a breach of trust which cannot be tolerated . . . .'" *Wholey's Case,* 110 N.H. 449, 450, 270 A.2d 609, 610 (1970) (quoting *Allen's Case,* 75 N.H. 301, 73 A. 804 (1909)).

Inattention and negligence in handling matters entrusted to an attorney by clients, and the resort to misleading statements to cover up these deficiencies to the detriment of clients, do not measure up to the standards demanded of members of the bar of this State. *Donovan's Case,* 108 N.H. 34, 39, 226 A.2d 779, 783 (1967). A lawyer shall not engage in conduct that involves dishonesty, fraud, deceit or misrepresentation, that prejudices the administration of justice, or that adversely reflects on his fitness to practice law. DR 1-102(A)(4), (5), (6).

The respondent's failure to notify this court or the Committee on Professional Conduct of his arrest for grand theft for a check in Florida drawn against insufficient funds is also of disciplinary consequence in this case. The question is whether the respondent was under a duty to disclose this fact, even though it was only an arrest

and even though, upon request of the victim, no indictment or information followed from the incident in Florida.

Supreme Court Rule 37(7) authorizes this court to take disciplinary action in response to an indictment, binding over or conviction involving a serious crime. *See, e.g., Nardi's Case*, 122 N.H. 277, 444 A.2d 512 (1982). However, the critical fact prompting final disciplinary action is not the fact of conviction or indictment, but the underlying conduct giving rise to that indictment or conviction. *See* SUP. CT. R. 37(7)(f) (reinstatement of attorney suspended on basis of conviction for a serious crime, upon reversal of conviction, does not terminate any disciplinary proceeding against the attorney); *In re Browning*, 23 Ill. 2d 483, 179 N.E.2d 14 (1961) (disciplinary proceeding based on same conduct as that giving rise to criminal charge not barred by acquittal of criminal charges); *cf. In re Crane*, 23 Ill. 2d 398, 400–01, 178 N.E.2d 349, 350 (1961) (underlying facts leading to conviction may mitigate discipline). An arrest by itself can also indicate underlying conduct of consequence to a disciplinary proceeding.

While the duty of a lawyer to disclose facts regarding *his own conduct* to an investigating tribunal is not entirely clear in the Code of Professional Responsibility (*see* American Bar Association MODEL RULES OF PROFESSIONAL CONDUCT § 8.1 and comment thereto), an attorney in this State is subject to discipline for failing to report to the Committee on Professional Conduct unprivileged knowledge of a lawyer's conduct involving dishonesty, fraud, deceit or misrepresentation or conduct prejudicial to the administration of justice or conduct reflecting adversely on a lawyer's fitness to practice law. DR 1-103; 1-102(4), (5), (6). An attorney is also subject to discipline for deliberately failing to disclose a material fact requested in connection with his application for admission to the bar. DR 1-101(A).

Insofar as Eshleman was under suspension at the time of his arrest and was contesting his suspension, his duty to keep this court and the conduct committee informed of all facts relevant to his fitness as a lawyer is at least as great as that of a new applicant. *See Delano's Case*, 58 N.H. 5, 5–6 (1876) (misconduct sufficient to prevent admission to the bar is sufficient to warrant removal from the bar). Hence, Eshleman's failure to disclose a grand theft arrest for a check in Florida drawn against insufficient funds is a further ground for discipline in this case.

The agreed upon facts of this case reveal a pattern of far-reaching disregard for the rights of clients and disrespect for the legal processes created by this court to protect those rights from abuses by members of the bar of this State. Misappropriation of clients' funds

is a serious error which in and of itself justifies disbarment. Falsely representing that state of affairs under oath is reprehensible, even if the record was set straight before any harm resulted from that misrepresentation. *See Olquin v. State Bar of California*, 616 P.2d 858, 861, 167 Cal. Rptr. 876, 879 (1980).

 In determining the discipline to be imposed in a given case, this court must consider mitigating factors, *Mussman's Case*, 111 N.H. 402, 412, 286 A.2d 614, 620 (1971), but such factors, including youth and inexperience, do not necessarily preclude disbarment for the protection of the public. *Harrington's Case*, 100 N.H. at 244–45, 123 A.2d at 397; *Nardi's Case, supra* at 279, 444 A.2d at 514. We are not convinced that the assertion that Eshleman was a young, solo practitioner who was "in over his head" is any excuse for his conduct, or any cause for mitigating the sanction in this case.

It is the opinion of this court that Maris Eshleman should be disbarred.

*Maris Eshleman is hereby disbarred. So ordered.*

BROCK, J., did not sit; the others concurred.