Original
LD-86-004

HENDERSON'S CASE

March 7, 1988

*Bamberger & Pfundstein*, of Concord (*Thomas E. Bamberger* and *Diana M. Folch-Pi* on the brief, and *Mr. Bamberger* orally), for the Committee on Professional Conduct.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for respondent.

PER CURIAM. The court's Committee on Professional Conduct instituted this proceeding on September 9, 1986, by filing a petition charging Lloyd N. Henderson with violating the Code of Professional Responsibility, as in effect prior to February 1, 1986 (the Code). The committee's petition requested the court to find that respondent had committed the violations and to suspend him from the practice of law for three months.

After respondent filed an answer generally denying the committee's allegations, and asking for the imposition of less severe discipline in the event the court were to find violations, the case was referred on November 26, 1986, for hearing and written report to Robert M. Larsen, Esquire, sitting as a judicial referee pursuant to Supreme Court Rule 37(13)(e). After hearing, the referee submitted his report on June 15, 1987, finding clear and convincing evidence, *see Edes' Case*, 118 N.H. 815, 817, 395 A.2d 498, 499 (1978), that respondent had violated certain of the Code's disciplinary rules, as well as one of the Rules of Professional Conduct, effective

February 1, 1986 (the Rules). Briefs were filed, and the parties have presented oral argument.

Respondent's violation of the Code and the Rules has been clearly established, both by the referee's findings and by the respondent's own admissions. Therefore, the only issue before us is the extent of discipline to be imposed. While the committee has recommended a three months' suspension, the respondent argues that suspension is too harsh a sanction for the particular misconduct involved in this case, and that the alternative of public censure would be appropriate discipline.

Before discussing the proper discipline to be imposed, we will very briefly describe the facts relevant to the misconduct findings. As legal counsel for the Town of Francestown, respondent represented the town in two superior court actions brought in 1983 and 1984. In these actions, a developer challenged the town's November 1982 refusal, based on zoning changes and supported by respondent's legal opinion, to permit the developer to proceed with a condominium development under building permits issued to the developer in 1972. It is unnecessary for us to detail the actions and inactions of respondent in the course of this representation of the town. Suffice it to say that, over a period of approximately three years from 1983 to 1986, respondent failed to file appearances and responsive pleadings, failed to communicate with his client, failed to prevent his client from defaulting, and eventually entered into a settlement of the first case, which mooted the second, without authority and without the knowledge of his client. The Town of Francestown thereafter terminated the respondent's services as town counsel and filed the complaint with the committee which led to this disciplinary proceeding.

Respondent's actions have been found by the referee to have violated the Code's disciplinary rules DR 6-101(A)(2) and (3) and DR 7-101(A)(1)–(3), as well as Rule 1.2(a). DR 6-101 requires a lawyer to act competently, and makes it misconduct for him either to handle a legal matter without adequate preparation or to neglect a legal matter entrusted to him. DR 7-101 requires a lawyer to represent a client zealously, and makes it misconduct for him intentionally to: fail to seek the lawful objectives of his client, fail to carry out a contract of employment, or prejudice or damage his client during the course of the professional relationship. Rule 1.2(a) requires a lawyer to consult with his client and to abide by his client's decisions concerning the representation and whether to settle a matter.

The issue before us is whether suspension from the practice of law is the appropriate discipline for this misconduct, or whether some lesser form of discipline will be sufficient. Respondent's misconduct can be generally described as neglect of his client's interests. This type of misconduct does not, respondent argues, justify the sanction of suspension, even for a limited period. He attempts, by citing cases in which the court has imposed the suspension sanction, *e.g.*, *Wholey's Case*, 110 N.H. 449, 270 A.2d 609 (1970); *Silverstein's Case*, 108 N.H. 400, 236 A.2d 488 (1967); *Donovan's Case*, 108 N.H. 34, 226 A.2d 779 (1967), to persuade us that most cases of suspension have involved more severe misconduct, such as conversion or misappropriation of funds, criminal convictions, or dishonesty and misrepresentation. He contrasts those types of misconduct with his neglect of his client's interests.

The committee, on the other hand, citing the same cases, argues that a suspension is appropriate where there has been neglect. The committee argues that suspension is a necessary sanction in this case to make clear to respondent that his misconduct is serious and must be corrected, as well as to satisfy the purpose of the court's disciplinary power, which is to protect the public, maintain public confidence in the bar, and preserve the integrity of the legal profession. *Carroll's Case*, 127 N.H. 390, 393, 503 A.2d 750, 751 (1985); *Eshleman's Case*, 126 N.H. 1, 4, 489 A.2d 571, 572 (1985). In this connection, the committee points out that respondent was privately reprimanded twice in 1985 for similar neglect in two matters unrelated to this case, and that these letters of reprimand show a pattern of neglectful conduct. The committee also notes that respondent was given a third reprimand in August, 1987.

Respondent argues that suspension here would be punitive and would not protect any interest that would not be equally protected by a public censure. He also argues that mitigating circumstances existed in his personal life at the time of the acts of misconduct, as well as in the peculiar circumstances of the litigation which he neglected. While we are obliged to consider mitigating factors, *id.* at 6, 489 A.2d at 574, we are not persuaded that the circumstances alleged by respondent should affect our decision here.

We find that the committee's position is the sounder one. It is true that, in some of our suspension cases, the type of misconduct was arguably more serious than respondent's neglect of his client's interests in this case. However, in *Hobbs' Case*, 75 N.H. 285, 73 A. 303 (1909), *Wholey's Case supra*, and *Edes' Case*, 118 N.H. 815, 395 A.2d 498, cited by respondent, the period of suspension was also longer, being *six months* in the first two cases and *one year* in the

last one. Furthermore, in *Donovan's Case,* the suspension order also provided that the lawyer could not resume his practice at the end of the three months' period without supervision. 108 N.H. at 40, 226 A.2d at 783. Respondent's neglect here extended over a significant period of time, during which similar neglect occurred in two other cases which he was handling, and there has been another case of neglect since that time.

We agree with the committee that the discipline imposed should be sufficiently severe to cause respondent to avoid similar acts of misconduct in the future. Furthermore, the maintenance of public confidence in the bar, and the proper exercise of our supervisory responsibility over the practice of law and the legal profession, require such discipline. Accordingly, respondent is suspended from the practice of law in this State for a period of three months beginning April 1, 1988, and ending, without further order of this court, on June 30, 1988. Prior to April 1, 1988, respondent shall make arrangements for another attorney or attorneys to handle his pending files, and shall file a written report with this court prior to that date outlining the arrangements he has made.

*So ordered.*