Original
No. LD-90-001

FLINT'S CASE

November 9, 1990

*Sanders & McDermott,* of Hampton (*David Wolowitz* and *J. Kirk Trombley* on the brief, and *Mr. Wolowitz* orally), Bar Counsel, for the Committee on Professional Conduct.

*Upton, Sanders & Smith,* of Concord (*Russell F. Hilliard* on the brief and orally), for the respondent, Gordon B. Flint, Jr.

BROCK, C.J.   The Committee on Professional Conduct (Committee) requests that Attorney Gordon B. Flint, Jr., be suspended from practicing law for a period of twelve months. *See* SUP. CT. R. 37(13). By order issued on September 7, 1990, in this proceeding, respondent was suspended from the practice of law pending issuance of this opinion; he was also suspended on June 15, 1989, from sitting as Special Justice of the Newport District Court during the pendency of a previous disciplinary suspension, and the judicial suspension is still in effect.

In January, 1990, the Committee filed a petition requesting that the respondent be suspended for a period of six months. The petition alleged that respondent had violated the Rules of Professional Conduct by failing to handle client matters adequately and by failing to respond to Committee requests. In March, the Committee moved to amend its petition, requesting an additional six-months suspension because of respondent's additional violations of the rules in failing to respond to Committee requests.

The petition was referred to the Honorable Arthur E. Bean, Jr., as referee, to conduct a hearing and file a written report including findings of fact and rulings of law concerning the above complaints. *See* SUP. CT. R. 37(13)(e). After hearing, the referee filed his report on March 31, 1990, recommending that the Committee's petition be granted.

The respondent does not dispute the referee's findings of fact. He was admitted to the New Hampshire Bar in 1975 and maintains an office in Newport. In the period 1988–89, Attorney Flint neglectfully represented a client in several cases in which he repeatedly failed to respond to settlement attempts of opposing counsel, failed to object to or appeal summary judgment, and failed to notify his client that summary judgment had been granted against the client and that his claim was lost. Throughout this time period, he repeatedly assured his client that matters were being handled appropriately. Without his client's knowledge or consent, Flint contacted opposing counsel to propose that Flint pay from his own funds an agreed-upon sum for settlement on behalf of the client. This conduct caused his client hardship and embarrassment.

In the period 1985–89, respondent neglectfully represented another client in several matters. The first matter was a personal injury case. After many attempts by the client to check on the status of the case, respondent assured his client that the case was going well. However, over the course of the following two years, respondent did not initiate the civil suit for the personal injury claim. The second matter was a workers' compensation claim in which respondent neither contacted any of the witnesses nor obtained any of the medical records regarding the claim. The client contacted respondent on several occasions regarding his worsening physical, mental, and financial condition and his urgent need for the resolution of the claim. Respondent never pursued the claim, did not contact his client, and did not return the client's telephone calls. Respondent paid out of his own funds several of his client's mortgage payments. Respondent also assured his client's bank that funds would be realized from the workers' compensation claim. As a result of respondent's failure to pursue the workers' compensation claim, his client suffered great hardship in not receiving any benefits. Ultimately, the client and his family obtained welfare benefits.

The final four complaints filed by the Committee involve Attorney Flint's failure in 1989–90 to respond to notices of complaints sent to him by the Committee. Respondent admits that he failed to respond within the time limits set by the rules.

With respect to the complaints involving the respondent's representation of the two above-mentioned clients and his conduct with respect to the Committee, the referee found that Flint had violated the following Rules of Professional Conduct: 1.1(a) (failure to provide clients with competent representation); 1.1(b)(4) (failure to

properly prepare legal matters under his care); 1.1(b)(5) (failure to assure that all necessary details were completed so as to avoid harm to his clients); 1.1(c)(1) (failure to gather sufficient facts in order to effectively handle legal matters); 1.1(c)(4) (failure to take action in a timely manner resulting in harm to clients); 1.3(a) (failure to act with reasonable promptness and diligence); 1.4(a) (failure to keep his clients reasonably informed regarding the status of the clients' cases and failure to comply with reasonable requests for information); 1.8(e) (providing financial assistance to his client by paying mortgage payments on the client's behalf during representation); 8.1(b) (failure to respond promptly to Committee requests); and 8.4(c) (engaging in conduct involving deceit and misrepresentation as to clients' cases).

Respondent has a long history of failing to cooperate with the Committee, as well as this court. We previously suspended him for three months on June 15, 1989, for failure to respond to the Committee's Petition for Public Censure. *See* Supreme Court Case No. LD-89-001. Prior to that suspension, respondent had also failed to respond to another committee notice of complaint. A hearing was ultimately held, and respondent was reprimanded by the Committee for his failure to cooperate.

The sole issue before us at this time is the extent of the discipline to be imposed upon Attorney Flint. The Committee recommends that he be suspended from the practice of law for twelve months and that he be ordered to reimburse the Committee for the costs of prosecuting the case against him, as provided by Supreme Court Rule 37(16). At the same time, the Committee acknowledges in its brief that "a twelve month suspension may be too lenient" in the light of additional facts disclosed before the referee. The respondent urges that his suspension be not greater than six months, and that he not be liable for the costs of investigating and prosecuting these matters.

■■ For the following reasons, we conclude that the respondent, Gordon B. Flint, Jr., should be disbarred. This court is empowered inherently and by statute, RSA 311:8, "to supervise the conduct of attorneys for the protection of the public and the maintenance of public confidence in the bar as a whole." *Mussman's Case*, 111 N.H. 402, 411, 286 A.2d 614, 620 (1971); *see Barnard's Case*, 101 N.H. 33, 34, 131 A.2d 630, 630–31 (1957). The power to remove attorneys from office is necessary not as a vehicle for inflicting punishment, but for the protection of the public from further acts of misconduct and to protect the integrity of the legal profession. *Woic-*

*cak's Case*, 131 N.H. 735, 740, 561 A.2d 1049, 1051 (1989);
*Wehringer's Case*, 130 N.H. 707, 719, 547 A.2d 252, 259 (1988), *cert.
denied*, 109 S. Ct. 1103 (1989); *Eshleman's Case*, 126 N.H. 1, 3–4, 489
A.2d 571, 572 (1985); *Mussman's Case, supra* at 412, 286 A.2d at 620;
*see Barnard's Case supra* (quoting *Welanko's Case*, 99 N.H. 413, 414,
112 A.2d 50, 51 (1955)). Every case is to be judged on its own facts
and circumstances, and the warranted sanctions are imposed to ac-
complish the desired ends. *Mussman's Case, supra* at 412, 286 A.2d
at 620 (quoting *Donovan's Case*, 108 N.H. 34, 39, 226 A.2d 779, 783
(1967)).

■ Attorneys in this State have the obligation to act at all times
"in conformity with the standards imposed upon members of the bar
as conditions for the right to practice law." SUP. CT. R. 37(1)(b). *See
Wehringer's Case supra*. The Rules of Professional Conduct provide
attorneys with ethical standards. *Wehringer's Case supra.*

The referee found, and the respondent admits, that he engaged in
a repeated pattern of conduct involving inattention to and neglect in
handling client matters. The respondent repeatedly failed to respond
to clients' inquiries and failed to apprise his clients honestly of the
status of their cases. In short, he repeatedly lied to his clients. He
failed to provide proper representation to his clients, and in an effort
to prevent his clients from discovering his inattention, he misled
them into believing that their matters were being appropriately han-
dled. As a result of his conduct, his clients suffered severe detriment.

■ In addition to his mishandling of client cases and his pattern
of dishonesty towards his clients and parties involved with his cli-
ents, respondent on four occasions did not cooperate with the Com-
mittee on Professional Conduct in responding to its requests.
Respondent's conduct, coupled with his past history of a suspension
and lack of cooperation with the Committee, does not meet the pro-
fessional standards required to be met by the members of the bar of
this State. *See Eshleman's Case*, 126 N.H. at 4, 489 A.2d at 573; *Don-
ovan's Case*, 108 N.H. at 39, 226 A.2d at 783.

■■ The gravity of unprofessional conduct is not determined
solely by the number of rules broken or by the particular rules vio-
lated, but is determined largely with reference to the attorney's be-
havior. *Wehringer's Case*, 130 N.H. at 718, 547 A.2d at 258. This case
is unlike most of our disbarment cases in that it does not involve the
breach of fiduciary duty or criminal conduct through misappropria-
tion or stealing of money. The case does, however, involve the most

serious of ethical considerations regarding the attorney-client relationship. *See id.* at 709, 547 A.2d at 253. Respondent's conduct undermines the very underpinnings of the practice of law, which are honesty toward his clients and loyal advocacy on their behalf. Additionally, his callous disregard for the Committee on numerous occasions, in conjunction with his inattention to and dishonesty with clients, is egregious behavior warranting disbarment. Respondent's numerous violations of the Rules of Professional Conduct cover a wide scope of behavior that the Rules seek to prohibit and render him unfit to be a member of the bar of this State.

■ We must be sensitive, of course, to mitigating factors in determining the discipline to be imposed. However, mitigating factors do not necessarily preclude disbarment. *Eshleman's Case,* 126 N.H. at 6, 489 A.2d at 574.

In his brief and oral argument, respondent urges that in determining sanctions we should conclude that his misconduct is not serious enough to warrant a twelve-months suspension. To support his contention that a shorter suspension is appropriate, respondent relies on previous cases in which short suspensions were ordered as a sanction for attorney misconduct. Respondent also asserts that he has already suffered from the fact that the publicity surrounding these matters has been magnified by his prior association with John Fairbanks and by his judgeship in the Newport District Court, and that this fact sets this proceeding apart from other disciplinary actions.

■■ It is our opinion that these factors do not mitigate the required discipline for the respondent's misconduct. As found by the referee, the respondent engaged in egregious conduct involving deceit and misrepresentation toward his clients and institutions involved with his clients. During and after his June 15, 1989 suspension, the respondent again failed to respond to the Committee's requests on several occasions. We are not persuaded by respondent's argument in favor of only a six-months suspension, based on previous cases in which short suspensions were ordered. Respondent's serious misconduct involving clients, compounded by his continual lack of cooperation with the Committee, warrants disbarment. Neither does the equal protection doctrine, as respondent argues, compel us to impose the same sanctions in all cases involving similar misconduct. *Bourdon's Case,* 132 N.H. 365, 374, 565 A.2d 1052, 1058 (1989) (citing *State v. Lemire,* 115 N.H. 526, 534, 345 A.2d 906, 912 (1975)).

Gordon B. Flint is hereby disbarred and ordered to reimburse the Committee for costs of investigating and prosecuting this matter. At the end of two years, he may petition this court for readmission to the bar of this State, subject to all requirements applicable to applications for admission to the bar, including passing the bar examination. *See* SUP. CT. R. 37(2)(d); RS. AND PROCEDURES OF PROF. COND. COMM. § 2.13.

*So ordered.*

All concurred.