Original
No. LD-90-027

# WHELAN'S CASE

December 31, 1992

*Bell, Falk & Norton, P.A.*, of Keene (*Arnold R. Falk* on the brief and orally), for the committee on professional conduct.

*Sulloway Hollis & Soden*, of Concord (*Warren C. Nighswander* on the brief and orally), for the respondent.

THAYER, J.   On November 15, 1990, the Supreme Court Committee on Professional Conduct (committee) filed a petition to impose a thirty-day suspension from the practice of law on the respondent, Dennis J. Whelan. The petition and the respondent's answer were referred to a Judicial Referee (*Maher*, J.) pursuant to Supreme Court Rule 37(13)(e). The referee held a hearing and filed a report containing findings of fact and rulings of law. While the committee alleged that the respondent violated four Rules of Professional Conduct (Rules), the referee determined that there were only two violations. The committee did not accept the referee's report, and we heard oral argument.

The facts are not disputed. Attorney K. William Clauson represented Mr. and Mrs. DesRosiers of Greensborough Road in Hanover in 1981. After Mr. DesRosiers' death, Clauson continued to represent Mrs. DesRosiers until 1983, when he transferred responsibility for her legal affairs to his partner, Daniel G. Smith. Smith handled all of Mrs. DesRosiers' financial affairs, including balancing her checkbook, and drafted her original will in 1984, a revision in 1986, and a codicil in 1987.

At the time of the events underlying this action, Mrs. DesRosiers was over ninety years old and in poor health. The respondent and his wife, Heide, had lived on Greensborough Road, next door to Mrs. DesRosiers, since 1974. Heide Whelan visited her almost daily and provided emotional support and physical care. When Mrs. Whelan was unable to visit Mrs. DesRosiers, the respondent would do so. In 1983, the respondent was admitted to the New Hampshire bar and became a partner with Smith and Clauson in 1985, practicing under the name of Clauson, Smith & Whelan.

In 1987, Mrs. DesRosiers asked the respondent to draft a codicil to her will because she wanted to leave her real estate to the respond-

ent and his wife. The respondent informed Mrs. DesRosiers that it would be improper for him to draft such a codicil and that she should see her own attorney, Daniel Smith, the respondent's partner. Attorney Smith drafted the codicil in which Mrs. DesRosiers left her house and property on Greensborough Road to the respondent and his wife. The codicil provided that "Heide has done innumerable kindnesses for me and has cared for me when I have needed care." Mrs. DesRosiers died in 1989.

This court has held that by drafting the 1987 codicil benefitting his partner, Attorney Smith violated Rule 1.8(c), prohibiting a lawyer from preparing an instrument giving the lawyer or the lawyer's spouse any substantial gift from a client, and Rule 1.10(a), providing that while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so. *In the Matter of Daniel G. Smith, Esq.*, LD-90-026 (December 10, 1991).

The committee requested that the respondent be suspended from the practice of law for violating the Rules cited above, and Rules 5.1(c)(2) and 8.4(a), which provide, respectively, that a lawyer shall be responsible for another lawyer's violation if the lawyer is a partner in the law firm in which the other practices, and that it is professional misconduct for a lawyer to knowingly assist or induce another to violate or attempt to violate the Rules of Professional Conduct, or to do so through the acts of another.

The referee ruled that the respondent violated Rules 1.8(c) and 1.10(a), but determined that there were no violations of Rules 5.1(c)(2) or 8.4(a). The respondent appeals the finding that he violated Rules 1.8(c) and 1.10(a), and the Committee appeals the finding that the respondent did not violate Rules 5.1(c)(2) or 8.4(a). The standard of review for findings made by a judicial referee in attorney discipline proceedings is "whether a reasonable person could reach the same conclusion as the referee based upon the evidence presented at the hearing." *Drucker's Case*, 133 N.H. 326, 329, 577 A.2d 1198, 1199 (1990).

Rule 1.8, which governs conflicts of interest, provides:

"(c) A lawyer shall not prepare an instrument giving the lawyer or person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."

Rule 1.10, the Rule governing imputed disqualification, provides:

"(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2."

In finding violations of both Rules 1.8(c) and 1.10(a), the referee noted that the respondent never represented Mrs. DesRosiers and did not prepare any part of her will or codicil, so that

"[o]n it[']s face, therefore, Mr. Whelan does not appear to have violated Rule 1.8(c). It is only when 1.8(c) is read together with 1.10(a) that it becomes evident to this referee that Rule 1.8(c) has been violated. In this Referee's opinion, both have to be read together and interchangeably to find the conflict which exists."

We disagree with the referee's interpretation of Rule 1.10(a), the imputed disqualification rule, as imposing vicarious liability for violations committed by another attorney. The respondent did not violate Rule 1.8(c) because the respondent did not prepare the codicil that made him a gift of property; Attorney Smith prepared the codicil. Under the referee's analysis, *any* member of a firm could be found to have violated Rule 1.8(c) when another member represents a client whom no attorney in the firm should represent because of the imputed disqualification rule.

The purpose of the imputed disqualification rule was to disqualify Attorney Smith from representing Mrs. DesRosiers in matters in which the respondent would be prohibited from representing Mrs. DesRosiers. There is no language in Rule 1.10(a) providing that Attorney Smith's violation of Rule 1.8(c) be imputed to another member of the firm. Rather, the Rule provides that the disqualification of any member of the firm, here, the respondent's disqualification under Rule 1.8(c), be imputed to Attorney Smith. We hold that the respondent did not violate Rule 1.8(c) or 1.10(a).

The referee determined that there were no violations under Rules 5.1(c)(2) or 8.4(a) because

"[t]he key element that must be present for a violation to occur is knowledge that something was being done improperly . . . . The knowledge that is necessary is . . . not only knowing an act was being done but also knowing that the act would constitute a violation of the rules. Mr. Whelan knew

that Attorney Smith would be drafting the codicil but did not have the knowledge that it was a violation of the rule."

The committee contests the referee's legal requirement that an attorney have actual knowledge that he or she is violating a Rule in order to be found guilty of misconduct. The respondent contends that he did not violate any Rule and has maintained the position that mere knowledge that a course of conduct has taken place is not enough to support a finding that an attorney violated the Rules; rather, the attorney must know that the course of conduct is prohibited by the Rules.

The respondent's defense is basically one of ignorance of the Rules of Professional Conduct, which is no defense. We hold that lawyers, upon admission to the bar, are deemed to know the Rules of Professional Conduct. "Attorneys in this State have the obligation to act at all times in conformity with the standards imposed upon members of the bar as conditions for the right to practice law." *Flint's Case*, 133 N.H. 685, 689, 582 A.2d 291, 293 (1990) (quotations omitted); SUP. CT. R. 37(1)(b).

We conclude that as a member of the New Hampshire bar, the respondent is charged with knowledge of the Rules of Professional Conduct; therefore, he violated Rules 5.1(c)(2) and 8.4(a). It was incumbent upon the respondent and Attorney Smith to obtain an informed waiver of the conflict of interest from Mrs. DesRosiers in order to have one partner draft a codicil benefitting another partner. *See Boyle's Case*, 136 N.H. 21, 23, 611 A.2d 618, 619 (1992) (Rule 1.7 permits attorney to represent client despite possible conflict when client is informed of conflict and consents to representation). In the alternative, the attorneys should have declined to prepare the codicil and suggested to Mrs. DesRosiers that she engage other counsel.

This court must exercise its authority to impose disciplinary sanctions "for the protection of the public, the maintenance of public confidence in the bar as a whole, and the prevention of the recurrence of similar conduct." *Mussman's Case*, 111 N.H. 402, 412, 286 A.2d 614, 620 (1971). The committee has requested that the respondent be suspended from the practice of law for thirty days. As we noted previously, Attorney Smith was publicly censured for drafting a codicil which benefitted his partner. The committee seeks a more severe sanction for the respondent because: 1) during the course of the disciplinary action, the respondent maintained that he did not

violate the Rules, in contrast to Attorney Smith's admission that he was wrong in drafting the codicil; and 2) the respondent received a monetary benefit by violating the Rules.

The respondent argues that there are mitigating factors that should preclude the imposition of a more severe sanction. The respondent points to the change in the governing ethical standards in 1986 with the switch to the Rules of Professional Conduct, and contends that the Code of Professional Responsibility, previously in effect in New Hampshire, would not have prevented Attorney Smith from representing Mrs. DesRosiers in preparing a codicil that included a gift to his partner. He notes that he had been practicing law for only a few years, concentrating in litigation matters, when the codicil was executed. Finally, he and his wife voluntarily paid $48,087 to satisfy all the pecuniary legacies contained in Mrs. DesRosiers' will because, before the codicil was executed, the will provided that the property be sold in order to fund the bequests.

█ We disagree with the argument that the more severe sanction of suspension is warranted in this case based on the fact that the respondent litigated this matter. Although he was mistaken as to the standard which applies when determining if disciplinary action against an attorney is necessary, the respondent had a reasonable, good faith belief that in order to violate the Rules of Professional Conduct, an attorney would have to be aware that his or her conduct was prohibited by the Rules. In addition, we look favorably upon the respondent's actions in paying the pecuniary legacies, and we note that if another attorney had drafted the codicil, the respondent would still have received Mrs. DesRosiers' property. Dennis J. Whelan is hereby publicly censured and assessed costs incurred by the committee and bar counsel in the investigation and enforcement of discipline in this matter.

*So ordered.*

JOHNSON, J., did not sit; the others concurred.