Original
No. LD-90-007

## WELTS' CASE

February 12, 1993

*Carroll R. Hunter, P.A.*, of Meredith (*Carroll R. Hunter* and *Peter J. Minkow* on the brief, and *Mr. Hunter* orally), for the committee on professional conduct.

*Aeschliman & Tober, P.A.*, of Portsmouth (*Stephen L. Tober* on the brief and orally), for the respondent.

HORTON, J.   This action is brought by the committee on professional conduct (the committee), which petitions this court to suspend the respondent, Jeremy Welts, from the practice of law in this State for a period of six months. On October 24, 1990, we appointed a Judicial Referee (*Bean*, J.) to conduct a hearing on the committee's petition. The referee found, by clear and convincing evidence, that the respondent violated Rules 1.1(a), 1.1(b)(5), 1.1(c)(4), 1.3(a), 1.4(a), and 8.4(c) of the Rules of Professional Conduct (the Rules). The respondent maintains that the evidence presented does not support the findings of ethical misconduct. Failing this argument, he contends that mitigating circumstances favor the imposition of a reprimand rather than a suspension.

Early in 1987, Robert and Mary Dambach consulted with the respondent's law firm regarding financial problems their small corpo-

ration was having with its principal lender, New Hampshire Business Development Corporation (NHBDC). In July 1987, they received from NHBDC notice of foreclosure on their home, which was mortgaged along with other property as collateral for the business loan. Their case was assigned to the respondent, who was able to negotiate a settlement with NHBDC, which reduced the outstanding amount of the loan and allowed the Dambachs an additional twenty-seven months for repayment. He also convinced the Internal Revenue Service that a $32,000 claim against his client should be the responsibility of NHBDC. At the time of the NHBDC settlement, it was decided that the Dambachs should bring suit against a consultant they had hired at the insistence of NHBDC. According to the Dambachs, the consultant's mismanagement of their corporation had been a substantial cause of their financial problems.

During the fall of 1987 and the year of 1988, the Dambachs, eager to procure funds with which to repay the outstanding loan balance, urged the respondent to bring suit against the consultant. Sometime around Christmas of 1988, the respondent falsely informed the Dambachs that the suit paperwork had been lost by the sheriff's department, even though the Dambachs understood that service previously had been made. Finally, in June of 1989 at a meeting called by the respondent, he confessed to them that he never had brought suit.

The respondent does not dispute that he misrepresented the status of the litigation to the Dambachs. He does, however, deny that this misrepresentation supports the "array of allegations of ethical misconduct."

■ The referee found by clear and convincing evidence that the respondent had violated the following Rules of Professional Conduct:

"Rule 1.1(a)—While the services performed were competent representation, the failure to bring suit is a lack of competent representation as is outlined in 1.1(b)(5) and (c)4.

Rule 1.3(a)—Failure to bring suit is also failure to act with reasonable promptness and diligence.

Rule 1.4(a)—Failure to properly inform his clients that suit had not been brought against [the consultant].

Rule 8.4—It is misconduct to engage in conduct involving misrepresentation, under paragraph (c)."

In our review of the referee's findings, "our only function is to determine whether a reasonable [person] could have reached the same decision as the [referee] on the basis of the evidence before him."

*Bourdon's Case*, 132 N.H. 365, 370, 565 A.2d 1052, 1055 (1989) (quotation omitted).

■ Rule 1.1(a) states: "A lawyer shall provide competent representation to a client." To support his argument that his representation exhibited "overall professional competence," the respondent directs us to the referee's finding that "the work performed by the respondent for the Dambachs was, except for the failure to bring suit and the misrepresentation that he had brought suit, . . . of the highest quality." However, "[i]t is not enough for respondent to demonstrate that in some, but not all, instances his conduct satisfied the requirements of the Rules of Professional Conduct." *Bourdon's Case*, 132 N.H. at 375, 565 A.2d at 1059. As the referee found, the respondent's failure to file suit contravenes the Rules' requirements for "attention to details and schedules necessary to assure that the matter undertaken is completed with no avoidable harm to the [clients'] interest," Rule 1.1(b)(5), and "undertak[ing] actions on the [clients'] behalf in a timely and effective manner," Rule 1.1(c)(4).

■ The respondent similarly denies that he failed to act with "reasonable promptness and diligence in representing a client," contrary to Rule 1.3(a). He maintains that because the statute of limitations still had a year and a half to run when he revealed his failure to file suit to the Dambachs, "no harm befell the Dambachs by the delay." We disagree. "Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." N.H. RULES OF PROF. CONDUCT 1.3, ABA model code comments. We find no error in the referee's determination that the respondent violated this rule.

Rule 1.4(a) requires a lawyer to "keep a client reasonably informed regarding the status of a matter and promptly comply with reasonable requests for information." The respondent concedes in his brief that he "freely admitted that he failed to properly inform the Dambachs that suit had not been filed, thereby contravening the terms of Rule 1.4(a)."

■ Finally, the referee found a violation of Rule 8.4(c), which establishes professional misconduct where a lawyer "engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation." The respondent contends that although he has never denied misrepresenting the status of litigation to the Dambachs, he has never acted in any way that can be characterized as dishonest, fraudulent, or

deceitful. Rule 8.4(c) is disjunctive, however. A finding of misrepresentation alone constitutes misconduct.

Finding no error in the referee's ruling, we turn to the determination of the appropriate sanction. Although the committee has petitioned to suspend the respondent for six months, the respondent maintains that mitigating circumstances justify the imposition of a reprimand rather than a suspension. "[The] purpose of the court's disciplinary power . . . is to protect the public, maintain public confidence in the bar, and preserve the integrity of the legal profession," *Henderson's Case*, 130 N.H. 313, 315, 538 A.2d 1222, 1224 (1988), and to prevent similar conduct in the future, *Astles' Case*, 134 N.H. 602, 605, 594 A.2d 167, 170 (1991). "[D]isciplinary action is not taken as a mode of inflicting punishment for an offense." *Silverstein's Case*, 108 N.H. 400, 401, 236 A.2d 488, 490 (1967) (quotation omitted). To accomplish the desired ends, every case is judged on its own facts and circumstances. *Flint's Case*, 133 N.H. 685, 689, 582 A.2d 291, 293 (1990).

The sanction determined must be sufficient to meet the purposes we have stated. It must be determined by giving appropriate weight to the severity of the violations found and to the mitigating circumstances disclosed by the record. As to severity, "[n]o single transgression reflects more negatively on the legal profession than a lie." *Astles' Case*, 134 N.H. at 606, 594 A.2d at 170. Although we have ordered disbarment as the appropriate sanction when faced with a lawyer's dishonesty in the past, *see id.* at 607, 594 A.2d at 170; *Flint's Case*, 133 N.H. at 691, 582 A.2d at 294; *Eshleman's Case*, 126 N.H. 1, 6, 489 A.2d 571, 574 (1985), those cases involved additional and repeated misconduct, including the respondents' failure to cooperate with the professional conduct committee. Here, the respondent's unprofessional conduct was isolated and his candor and cooperation with the committee unchallenged.

As to mitigation, the respondent refers this court to the thirteen mitigating factors outlined in the American Bar Association's *Standards for Imposing Lawyer Sanctions*, arguing that ten are solidly present in his case. *See* Laws. Man. on Prof. Conduct (ABA/BNA) 01:839–40 (June 17, 1992). We note that although this court has never formally adopted these standards, we have examined mitigators when imposing sanctions in the past. *See, e.g., Whelan's Case*, 136 N.H. 559, 564, 619 A.2d 571, 574 (1992); *Carroll's Case*, 127 N.H. 390, 393, 503 A.2d 750, 751 (1985). The respondent notes, in mitigation, the absence of a prior disciplinary record and the absence of a dis-

honest or selfish motive. He asserts the presence of personal and emotional problems. The referee did in fact cite the respondent's testimony of a litany of such problems during the violation period, including serious marital discord, serious and unpleasant disruption in the respondent's law firm, a diagnosed adjustment disorder, depression, and financial pressures. The respondent also asserts timely, good faith efforts to rectify the consequences of the misconduct. The record supports that the respondent "brought the misrepresentation to the attention of his clients," but did little more in the way of rectification. He correctly asserts full and free disclosure to the committee and cooperation in their proceedings. He claims inexperience in the practice of law, which appears on the record, but this is of little materiality to the violations found. *See Eshleman's Case*, 126 N.H. at 6, 489 A.2d at 574. He claims good character and reputation, a claim unchallenged other than by this incident. He points to his present position in the General Counsel's Office of the National Aeronautics and Space Administration, a position the referee found to be conditioned on his continued good standing at our bar. At oral argument it was disclosed that this condition could be waived, but promotion would be denied in the absence of such standing. Finally, the respondent claims the mitigating factor of remorse. On the record as a whole, this claim would seem to be appropriate.

The referee, in reviewing mitigation, stated that "[t]he evidence, including the demeanor of the respondent, at the hearing is entirely consistent with the request [reprimand] made by counsel for the respondent." In recounting the committee's arguments regarding the severity of the offense, the referee found the case for suspension to be based on "an equally strong argument on behalf of the Committee."

■ We conclude that public censure will satisfy the stated purposes of protecting the public, maintaining the public confidence in the bar, preserving the integrity of the legal profession, and deterring future misconduct. The respondent's violations must be considered substantial, particularly the misrepresentation. His violations, however, flow essentially from an isolated course of conduct, which he voluntarily disclosed in a manner calculated to mitigate prejudice to his clients. The respondent does not have a prior disciplinary record, *compare Flint's Case*, 133 N.H. at 688, 582 A.2d at 292, and we agree that the respondent did not act for personal gain. We conclude that the respondent has made a persuasive case for mitigation. We note, however, that despite all of the factors driving the respondent

to procrastinate, he could have avoided the result here by merely recognizing his problems and promptly withdrawing from representing his clients.

We order public censure on all the violations charged and order the respondent to reimburse the committee for the costs of investigating and prosecuting this matter, *see* SUP. CT. R. 37(16).

*So ordered.*

All concurred.