Original
No. LD-96-009

# DOHERTY'S CASE

December 4, 1997

*Green, McMahon and Heed*, of Keene (*Peter W. Heed* and *G. Jeremy Hockensmith* on the brief, and *Mr. Heed* orally), for the committee on professional conduct.

*Tober Law Offices, P.A.*, of Portsmouth (*Stephen L. Tober* and *Julie S. Friedman* on the brief, and *Mr. Tober* orally), for the respondent.

HORTON, J. The Supreme Court Committee on Professional Conduct (committee) petitioned this court for a two-year suspension of the respondent, Brian G. Doherty. This court referred the matter to a Judicial Referee (*Dunn*, J.) for a hearing. The referee determined that the respondent violated New Hampshire Rules of Professional Conduct (Rules) 1.3 (lacking reasonable promptness and diligence), 1.15(a)-(c) (failing to safekeep property), 8.4(a) (violating the rules of professional conduct), and Supreme Court Rule 50(2)B (failing to segregate client funds). The referee made no recommendation on the committee's request for a two-year suspension. The respondent contends that the evidence does not clearly and convincingly support the referee's findings, and that mitigating circumstances favor the imposition of a public censure rather than a suspension. We affirm the referee's findings and order a two-year suspension.

The referee's report and the record below support the following facts. In February 1991, the respondent agreed to represent Joanna and Donald Ducey in a Chapter 11 personal bankruptcy action. At the outset of his representation, the respondent accepted a nonre-

fundable $10,000 retainer as partial payment of a total fee of $15,000. The respondent did not deposit this initial payment into a separate client trust account, but instead deposited the money directly into his general office account and expended the funds for his own purposes.

The respondent subsequently failed to follow the proper procedures that would allow him to accept the fee in the bankruptcy action. He failed to file with the bankruptcy court either an application to be employed as counsel for the Duceys, or a request for permission to accept the $10,000 fee. Moreover, he failed to disclose to the bankruptcy court that he had accepted additional post-petition fees.

In July 1991, while experiencing significant financial difficulties, the respondent informed the Duceys that he intended to leave his law practice and relocate to Florida. The Duceys retained a new attorney. In September 1991, prior to completion of the Duceys' bankruptcy action, the respondent petitioned the United States Bankruptcy Court for the District of New Hampshire for leave to withdraw from further representation of the Duceys.

On October 2, 1991, the respondent filed a Motion For Allowance of Attorney's Fees Nunc Pro Tunc, claiming fees and expenses of approximately $14,290. At that time, the respondent had not filed the Duceys' bankruptcy reorganization plan. After a full evidentiary hearing, the bankruptcy court granted the respondent's motion to withdraw but ordered him to turn over the $10,000 retainer to the Duceys for the purpose of retaining new counsel to complete their reorganization. The respondent refused to disgorge the funds and appealed to the United States District Court for the District of New Hampshire. The respondent, however, elected not to pursue the appeal in the erroneous belief that his own pending bankruptcy would discharge the $10,000 debt. On August 3, 1992, the district court dismissed the respondent's appeal.

In April 1992, approximately six months after withdrawing from representing the Duceys, the respondent filed a personal Chapter 7 bankruptcy petition. In response, the Duceys petitioned the court to disallow the discharge of the $10,000 debt. The bankruptcy court held that the debt was not dischargeable and that there was "no such thing as a non-refundable, earned-upon-receipt retainer for an attorney undertaking representation of a debtor" in a bankruptcy proceeding. *In re Ducey*, 160 B.R. 465, 473 (Bankr. D.N.H. 1993). Emphasizing the respondent's fiduciary duty to the Duceys, the court noted that the respondent failed to segregate the Duceys' retainer into a separate client-trust account in contravention of Rule

1.15(a)(1). Moreover, the court held that the respondent's actions constituted a defalcation under the Bankruptcy Code, as further evidenced by his failure to account for and disgorge the retainer when ordered to do so by the court. *Id.*

In March 1994, the United States District Court for the District of New Hampshire affirmed the decision of the bankruptcy court. On January 17, 1996, the committee held an evidentiary hearing regarding the respondent's actions in the Ducey matter. Finally, in February 1996, the respondent disgorged the funds, nearly 4 ½ years after the bankruptcy court's initial order on November 15, 1991.

██ The referee found that the respondent violated Rules 1.3, 1.15(a)-(c), and 8.4(a), and Supreme Court Rule 50(2)B. When a disciplinary action of this sort comes before this court, we address two issues. First, whether the record supports the findings and rulings of the referee, and second, the appropriate sanction to impose against the respondent. *Wehringer's Case*, 130 N.H. 707, 710, 547 A.2d 252, 253 (1988), *cert. denied*, 489 U.S. 1001 (1989). In reviewing the referee's findings, we "determine whether a reasonable person could have reached the same decision as the referee on the basis of the evidence before him." *Welts' Case*, 136 N.H. 588, 590, 620 A.2d 1017, 1018 (1993) (quotation and brackets omitted). Based on a careful review of the record, we find that a reasonable person could have reached the same decision as the referee.

██ The respondent denies that he failed to act with "reasonable promptness and diligence in representing a client," contrary to Rule 1.3(a). Rule 1.3(b)(2) states that performance by a lawyer is prompt and diligent when "it is carried out with no avoidable harm to the client's interest nor to the lawyer-client relationship." N.H. R. PROF. CONDUCT 1.3(b)(2). We agree with the referee that given the bankruptcy court's order to disgorge the $10,000 fee, the respondent had a duty to arrange for a review of fees earned and a refund of fees not earned when he withdrew from the Duceys' representation. Accordingly, the referee appropriately found that the respondent's failure to refund fees to his former clients for over four years demonstrated a lack of promptness and diligence.

The referee also determined that the respondent failed to segregate his clients' funds in a separate client-trust account in contravention of Supreme Court Rule 50(2)B and Rule 1.15. These rules require attorneys to deposit all cash property of clients in clearly designated separate trust accounts. *See* SUP. CT. R. 50(2)B; N.H. R. PROF. CONDUCT 1.15(a)(1). The respondent admitted to the com-

mittee that his conduct violated the rules regarding segregation of client funds. We find no error in the referee's findings. Moreover, having determined that the respondent violated Rules 1.3 and 1.15(a)-(c), the referee appropriately found that the respondent also violated Rule 8.4(a), which states that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct." N.H. R. PROF. CONDUCT 8.4(a).

■ Finding no error in the referee's ruling, we turn to the sanction. Although the committee has petitioned to suspend the respondent for two years, the respondent contends that mitigating circumstances justify the imposition of a public censure rather than a suspension. The purpose of this court's disciplinary power is "to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." *Tocci's Case*, 140 N.H. 68, 71, 663 A.2d 88, 90 (1995) (quotation omitted). "[D]isciplinary action is not taken as a mode of inflicting a punishment for an offense." *Silverstein's Case*, 108 N.H. 400, 401, 236 A.2d 488, 490 (1967) (quotation omitted). To accomplish the desired ends, every case is judged on its own facts and circumstances. *Flint's Case*, 133 N.H. 685, 689, 582 A.2d 291, 293 (1990).

The sanction must be determined by affording "appropriate weight to the severity of the violations found and to the mitigating circumstances disclosed by the record." *Welts' Case*, 136 N.H. at 592, 620 A.2d at 1019. We have often taken severe disciplinary action in cases involving an attorney's misuse of client funds. "A lawyer's obligation to refrain, at the least, from misuse of a client's property must . . . stand among the most insistent of professional norms." *Connolly's Case*, 127 N.H. 786, 790, 508 A.2d 1054, 1057 (1986).

The referee found by clear and convincing evidence that the respondent breached various fiduciary duties owed to the Duceys. The respondent failed to place the Ducey's retainer into a separate trust account, and instead deposited the funds into his general office account in contravention of well-settled rules regarding segregation of client funds. The respondent then expended the funds for his own purposes prior to earning the fee during a time when his own law practice and family business were at or near bankruptcy. Moreover, the respondent displayed an unyielding contempt for the judicial system as evidenced by his steadfast refusal to disgorge the fee.

As to mitigation, the respondent relies upon mitigating factors outlined in the American Bar Association's STANDARDS FOR IMPOSING LAWYER SANCTIONS, contending that seven mitigators

apply in this case. *See* LAWS. MAN. ON PROF. CONDUCT (ABA/BNA) 01:839-40 (June 17, 1992). Although we have never formally adopted these standards, we have examined mitigating factors when imposing sanctions in the past. *See, e.g., Welts' Case*, 136 N.H. at 592, 620 A.2d at 1019; *Whelan's Case*, 136 N.H. 559, 564, 619 A.2d 571, 574 (1992); *Carroll's Case*, 127 N.H. 390, 393, 503 A.2d 750, 751 (1985). In response, the committee argues that the following aggravating factors favor a two-year suspension: (1) dishonest or selfish motives; (2) refusal to acknowledge the wrongful nature of his acts; (3) vulnerability of the victim; (4) indifference in making restitution; and (5) failure to obey court orders.

The respondent emphasizes the absence of a prior disciplinary record and the absence of a dishonest or selfish motive as mitigating factors. He contends that his unblemished prior record and his sincere belief that he was entitled to the non-refundable retainer as a fee for his services weigh heavily against the committee's recommendation for a two-year suspension. Although absence of a prior disciplinary record is an acknowledged mitigator, it does not dispense with the necessity for disciplinary action. *Basbanes' Case*, 141 N.H. 1, 8, 676 A.2d 93, 97 (1996).

The respondent's testimony before the referee indicated that he had experience in the areas of taxation, business matters, business reorganizations, tax consultation, and estate planning, and that he had approximately thirteen years of experience at the time he represented the Duceys. The respondent also testified that he prepared the petition in his family business's bankruptcy action. Given the respondent's experience, he should have known that he violated his fiduciary duty to the Duceys when he placed the retainer in his general account and expended the funds before he had earned them. We refuse to recognize negligent or willful blindness as a mitigating factor that would justify a more lenient sanction. *Woiccak's Case*, 131 N.H. 735, 741, 561 A.2d 1049, 1052 (1989). Moreover, we have repeatedly stated that "inexperience or unfamiliarity with the applicable laws will not mitigate attorney misconduct." *Tocci's Case*, 140 N.H. at 71-72, 663 A.2d at 90. The respondent had a fiduciary responsibility to ensure that he maintained the integrity of client trust accounts. Furthermore, in disobeying four court orders to disgorge the funds, the respondent placed his own financial difficulties above the needs of his clients, seriously calling into question the absence of a selfish motive.

The respondent further maintains that during his representation of the Duceys, he was experiencing personal and emotional difficulties. Specifically, the respondent describes the losses of his long-

time family business and law practice as painful and emotionally debilitating events in his life. We emphasize, however, that even if an attorney is under the greatest of personal or financial pressures, there is no justification for commingling and converting client funds. Accordingly, we reject the respondent's argument that these factors warrant a more lenient sanction.

The respondent next argues that suspension of his license to practice law in New Hampshire would have a significant detrimental impact on his new career as a certified financial planner. The respondent maintains that he is subject to various reporting requirements promulgated by the Certified Financial Planner Board, the International Association of Financial Planners, and the Securities and Exchange Commission (SEC). The respondent conceded at oral argument that a suspension will simply trigger an inquiry into the matter and not an automatic expulsion. We believe that it is appropriate for the SEC, if it chooses, to conduct its own inquiry to determine whether the transgressions found will interfere with the respondent's ability to serve his investment clients. The possibility of such an inquiry does not warrant the imposition of a less severe sanction.

Finally, we find little merit in the respondent's arguments that his cooperation with the disciplinary authority, remorse for his actions, and character and reputation favor the imposition of a public censure rather than a two-year suspension. The respondent resigned from the New Hampshire Bar Association shortly after the professional conduct committee commenced its investigation and unsuccessfully argued before this court that his resignation from the bar had severed any disciplinary authority and jurisdiction over him. We agree that the respondent demonstrated a cooperative attitude toward the proceedings once he rescinded his resignation and realized the severity of his actions. Taking into account the respondent's tardy remorse and his character and reputation, we do not believe that a sanction other than a suspension is warranted.

Based on the findings of the referee and the record before us, we conclude that a suspension is necessary to protect the public, maintain the public confidence in the bar, preserve the integrity of the legal profession, and deter future misconduct. Accordingly, the respondent is suspended from the practice of law in this State for a period of two years and ordered to reimburse the committee for the

costs of investigating and prosecuting this matter. *See* SUP. CT. R. 37(16).

*So ordered.*

BRODERICK, J., did not sit; the others concurred.