Original
No. LD-99-004

SHERIDAN'S CASE

September 6, 2001

*McNeill, Taylor & Gallo, P.A.*, of Dover (*Robert J. Gallo* on the brief and orally), for the professional conduct committee.

*William C. Sheridan*, by brief and orally, *pro se*.

BRODERICK, J. In August 1999, the Supreme Court Committee on Professional Conduct (Committee) filed a petition with this court seeking a public censure against the respondent, William C. Sheridan. The petition was referred to a Judicial Referee (*O'Neil, J.*) for hearing and recommendation. By agreement, the matter was submitted to the referee on the pleadings, an agreed statement of facts and memoranda of law. The respondent did not contest that his conduct in the handling of a probate estate violated various rules of professional conduct, but argued that a public censure was not justified and that the complaint against him was barred by the statute of limitations and laches.

The referee found by clear and convincing evidence that the respondent had violated New Hampshire Rules of Professional Conduct (Rules) 1.1(a), 1.1(b)(1), 1.1(b)(5), 1.1(c)(4), 1.3(a) and 8.4(a), and that the applicable statute of limitations had not expired. He recommended that the respondent be publicly censured, assessed all expenses incurred by the Committee and required to complete the practical skills course within twelve months. We adopt the referee's recommendations.

The record reveals the following undisputed facts. In June 1992, Gene Levigne III died, and in August of the same year, his widow, Norma Levigne, was appointed executrix of his estate. The respon-

dent was retained by the executrix as counsel for the estate. On June 30, 1993, the Hillsborough County Probate Court appointed him to serve as Commissioner of the then insolvent estate. *See* RSA 557:1 (1997). Thereafter, the respondent failed to file any accounts on behalf of the executrix, the first of which was due in 1993, and neglected to perform any of his duties as Commissioner between June 30, 1993, and June 30, 1994.

In January 1996, the probate court notified the respondent of his numerous defaults, and he subsequently sought and was granted an extension of time to satisfy his obligations. Although the respondent had secured an extension of time to meet his obligations to the estate, he nonetheless neglected to meet those obligations. In February 1997, not having cured the defaults, the respondent was removed as counsel to the estate and a new Commissioner was appointed. The probate judge subsequently filed a professional conduct complaint with the Committee against the respondent.

The respondent admits that between June 30, 1993, and June 30, 1994, he failed to file any accounts for the estate in his capacity as counsel, and did not, as Commissioner, post and send notices to the creditors, receive claims from creditors, or file a report detailing which claims he believed should be allowed or disallowed. To explain his lapses, he contends that until June 1993 his associate was handling the representation of the estate. He alleges that he was not informed of the various defaults until January 1996, after the dissolution of his law partnership and after he sustained debilitating injuries in August 1994 and in March 1995. He further contends that his representation of the estate, while admittedly deficient, was due in part to the illness and subsequent death of the executrix in August 1996.

The respondent argues that his failure to make timely filings in the probate court prior to 1996 is insufficient misconduct, by itself, to warrant public censure. He contends that only his failure to file accounts after receiving an extension of time coupled with his failure to file those accounts previously would justify such a sanction. He asserts, however, that because he was recovering from serious injury during the period of the extension, which he believes offers him some protection under the Americans with Disabilities Act (ADA), *see* 42 U.S.C. § 12131, a public censure would be inappropriate. He also asserts that because he was previously sanctioned by this court for unrelated conduct occurring during the period of his disability, a new sanction would be duplicative. Finally, in his brief, the respondent makes a fleeting and totally underde-

veloped contention that the present complaint is barred by the doctrine of laches or by the statute of limitations.

"The standard of review for findings made by a judicial referee in attorney discipline proceedings is whether a reasonable person could reach the same conclusion as the referee based upon the evidence presented . . . ." *Whelan's Case*, 136 N.H. 559, 561 (1992) (quotation omitted). "It is not our role to [make independent findings and] substitute [them] for the judgment of the referee." *Robertson's Case*, 137 N.H. 113, 116 (1993) (quotation omitted).

In this case, the referee found that the ADA was not applicable to the respondent's case, that the respondent had "violated all the Rules of Professional Conduct alleged by the Committee without valid excuse or justification," and that the six-year statute of limitations codified in Rule 1.10(a) was applicable and had not expired. The referee also concluded that the respondent's prior public censure was for conduct unrelated to the facts and circumstances of this case.

We first address the respondent's argument that his challenged conduct in 1993 and 1994 does not support a public censure. In doing so, we are mindful of our "ultimate authority to determine what sanctions, if any, to impose on members of the . . . bar whose conduct does not comport with the professional standards outlined in the Rules . . . for the protection of the public and preservation of the integrity of the legal profession." *Wood's Case*, 137 N.H. 698, 701 (1993) (quotation and citation omitted). We are mindful that in determining discipline every case must be judged on its own facts and circumstances. *See Welts' Case*, 136 N.H. 588, 592 (1993).

█ In his brief, the respondent admits that the "failure to file the requisite probate documents between August of 1992 and June of 1994 . . . [was] prior to [his eye and hip] injuries and thus clearly not governed by the ADA." It is this conduct that serves as the primary source of his ethical violations. The conduct occurred primarily and substantially before the respondent was injured in August 1994 and it was exacerbated by his failure to seek further extension of the filing deadline after the original extension expired. His professional negligence and lack of diligence was, therefore, unrelated to any disability. Accordingly, we need not reach the respondent's argument that the ADA affords him some protection for his ethical lapses.

The remaining issue is the determination of the proper sanction. In assessing the appropriateness of the referee's recommendation of

public censure, we must consider whether such a sanction, under the facts and circumstances of this case, is necessary "to protect the public, maintain public confidence in the bar, and preserve the integrity of the legal profession." *Henderson's Case*, 130 N.H. 313, 315 (1988). We must also assess what sanction is likely to prevent similar misconduct in the future. *See Astles' Case*, 134 N.H. 602, 605 (1991). In calculating the proper remedy, we are mindful that discipline is not imposed as punishment, *Silverstein's Case*, 108 N.H. 400, 401 (1967), and that relevant mitigating factors should be considered, *Flint's Case*, 133 N.H. 685, 690 (1990).

In this case, the respondent identifies no viable mitigators. His injuries, although serious and unfortunate, were not the cause of his misconduct. Accordingly, they cannot afford him any protection. Further, although the respondent may have delegated the oversight of the estate to an associate, he remained counsel and Commissioner of record and thus responsible to ensure that the filings were made and duties discharged in a proper and timely fashion. By his own admission, he failed to do so. In addition, the respondent, who has been a member of the New Hampshire bar since 1987, has a prior disciplinary record. He was publicly censured in 1998 for allowing a civil case to default and in an unrelated disciplinary action, also in 1998, he received a public censure for admittedly co-mingling trust and operating accounts.

The respondent's lack of diligence and competence in his handling of the Levigne estate over an extended period of time falls well below his ethical obligations and evidences a significant breach of professional responsibility. To suggest that prior sanctions on unrelated matters occurring in the same general time frame as the case before us render any further sanction unnecessary misses the mark. Sanctions relate to conduct, not to time periods. Independent violations warrant discrete sanctions.

We conclude that public censure will satisfy the stated purpose of protecting the public, maintaining public confidence in the bar, preserving the integrity of the legal profession, and deterring future misconduct. *See Wood's Case*, 137 N.H. at 701. Accordingly, we order public censure on all the violations charged and further order that the respondent reimburse the Committee for all of its expenses, including legal fees, incurred in investigating and prosecuting this matter, and complete the practical skills course within twelve months. *See* SUP. CT. R. 37(16).

The respondent's remaining arguments lack merit and warrant no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993).

*So ordered.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.