Original
No. LD-92-009

WOOD'S CASE

November 23, 1993

*Ahlgren & Perrault, P.A.*, of Portsmouth (*John L. Ahlgren* on the brief and orally), for the committee on professional conduct.

*Blair C. Wood,* by brief and orally, *pro se.*

THAYER, J.   The Supreme Court Committee on Professional Conduct (committee) filed a petition seeking public censure, alleging that the respondent, Blair C. Wood, violated various Rules of Professional Conduct (Rules).

The committee's petition was not referred to a judicial referee because the parties stipulated to the material facts and exhibits. Wood practices law in Hanover and has lived in Lebanon for approximately twenty years. In June 1990, he met with representatives of Heritage Companies (Heritage) to discuss the possibility of developing a mall near exit 15 of Interstate 89 in Enfield. Wood had previously dealt with the Enfield site and had obtained town approvals for its commercial development. Heritage retained Wood because of his knowledge of Enfield planning issues and of the composition of the Enfield zoning and planning boards. Wood knew that Heritage had previ-

ously considered other sites but did not know that other sites were still under consideration.

In June and July 1990, Wood twice conferred with Heritage representatives by telephone and responded in writing to their request for a review of Enfield's zoning ordinance. He informed Heritage that his partner, Jay P. Cooper, would be responsible for developing a strategy to gain approvals for a mall in Enfield. Through July and August, Heritage's requests continued to focus on the Enfield property. Unknown to either Wood or Cooper, however, Heritage secured an option to purchase property in Lebanon. In early November, Heritage asked Cooper for advice on gaining approval of a mall on the McQuade site in Lebanon at exit 16 of Interstate 89. Cooper contacted the Lebanon city engineer and the planning board chairman regarding possible commercial and rezoning of the McQuade property, and responded to Heritage's request with a detailed memorandum on November 21, 1990.

At some point after November 21, Cooper discovered that the McQuade site for the mall in Lebanon abutted Wood's property. Cooper informed Wood that Heritage was exploring developing the mall on the McQuade property. Wood and his family opposed rezoning the McQuade property and building a mall there. Cooper notified Heritage of Wood's conflict and of the firm's decision to withdraw from further representation, and recommended replacement counsel.

Over the weekend of December 8–9, 1990, Heritage commissioned a survey of selected residents asking how they would react to the development of a large regional mall near exit 16 of Interstate 89, and possible rezoning of property in that area. Neither Heritage nor the McQuade site were identified in the survey. On December 10, 1990, a petition signed by thirty-two Lebanon residents was filed with the Lebanon City Council seeking to rezone a portion of the McQuade property, tax lot 55, from a rural zone to a commercial zone. The signatures were obtained by Heritage's new attorney.

Heritage's plans for developing a mall on the McQuade property involved rezoning 122 acres of undeveloped land to allow for general commercial use. The mall was to be located on two lots: one in Enfield, which Wood had explored, and the McQuade lot in Lebanon, which Cooper had explored. On December 11, 1990, Heritage's new attorney gave an interview to the *Valley News*, a Lebanon newspaper, about the proposed mall. The reporter also contacted Wood, who made statements that were published in an article on the proposed mall on December 12, 1990.

The newspaper article identified Heritage as the developer and described the size of the project. It noted that because of the scope of

the proposed zoning change, "its fate is left to Lebanon voters, who will decide in a referendum in March." The article included favorable descriptions of the project from various residents, and then referred to Wood as an opponent of the project, stating the reasons for his opposition. On December 17, 1990, Heritage's attorney wrote to Wood indicating Heritage's concerns about Wood taking a public position adverse to Heritage.

Wood and his family wrote letters to the Lebanon City Council and attended public meetings to express their opposition to rezoning the McQuade site to allow commercial development, including the proposed mall. On December 22, 1990, another article on the proposed mall was published in the *Valley News*. This article contained references to Wood's letter to the city council and his arguments in opposition to the mall contained in the letter.

On January 3, 1991, the Lebanon Conservation Commission gave an advisory opinion to the city council and unanimously recommended rejecting the proposed zoning change. On January 7, 1991, the Lebanon Planning Board held a public meeting for the purpose of giving an advisory opinion to the city council. The board voted to recommend that the McQuade property not be rezoned. Wood attended these meetings and spoke in opposition at the January 7 meeting. On January 9, 1991, the Lebanon Zoning Map Change Committee determined that it did not have enough time to adequately evaluate the proposed zoning change. Without having filed an application for subdivision approval or site plan review, Heritage withdrew its plans to develop the McQuade site on January 23, 1991.

The committee's petition for public censure alleged that Wood violated Rules 1.9(a), 1.9(b), 1.16(b), 1.16(d), and 8.4(a). We will not address the committee's allegations of further violations contained in its brief as the committee's petition did not allege them, nor was the respondent put on notice that the stipulation of facts would serve as the basis to allege additional violations.

This court retains the ultimate authority to determine what sanctions, if any, to impose on members of the New Hampshire bar whose conduct does not comport with the professional standards outlined in the Rules. "The court may suspend, disbar or publicly censure [the] respondent-attorney upon such terms and conditions as the court deems necessary for the protection of the public and preservation of the integrity of the legal profession." SUP. CT. R. 37(13)(f). This petition presents issues that are before this court for the first time, implicating an attorney's duty of loyalty to a client and an attorney's ability to pursue and express his or her personal beliefs.

Rule 1.9(a) provides:

"A lawyer who has formerly represented a person in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that client's interests are materially adverse to the interests of both unless the former client consents after consultation and with knowledge of the consequences; . . . ."

Here, the formerly represented "person" is Heritage. Wood represented Heritage in the matter of locating a mall in Enfield; his partner represented Heritage in the matter of locating the same mall in Lebanon. These matters were substantially related. Under Rule 1.9(a), a lawyer who has represented a person in a matter shall not thereafter "represent another person" in a substantially related matter in which that client's interests are materially adverse. The question which then arises is whether Wood's pursuit of his personal interests constitutes representation of "another person."

The committee suggests a broad interpretation of "another person" to include a lawyer's representation of his or her own interests, *i.e.*, a lawyer acting *pro se*. The committee contends that such an interpretation is necessary in order to enforce the duty of loyalty that a lawyer owes to a former client. Wood relies on the text of the Rule itself, together with the code comments, and the legislative history of Rule 1.9 to support his argument that "another person" should be interpreted to mean "another client." We are persuaded by Wood's arguments.

While Rule 1.9(a) first refers to "formerly represent[ing] a person" and a lawyer's obligation to "not thereafter represent another person," the remainder of the Rule contains the terms "that client's interests," and "the former client." The Rule thus refers to the formerly represented person as "the former client." "Another person" is the second client, referred to in the Rule as "that client." In addition, Rule 1.9(b) refers to a client and a former client, not "persons."

Although Rule 1.9(a) includes references to "persons" as opposed to "clients," the drafting committee originally used the word "client" where the Rule now contains the word "person." The change in terminology was not made for the purpose of preventing a lawyer from pursuing his or her personal interests under the Rule; instead, replacing "client" with "person" in Rule 1.9(a) was intended to "emphasize that the purpose of the Rule was to prohibit a lawyer from even entering [into] a client-lawyer relationship unless the former client consents after consultation." AMERICAN BAR ASSOCIATION CENTER FOR PROFESSIONAL RESPONSIBILITY, *The Legislative His-*

*tory of the Model Rules of Professional Conduct: Their Development in the ABA House of Delegates* 70 (1987). New Hampshire's Rule 1.9 is nearly identical to Model Rule 1.9. *See* N.H. R. PROF. CONDUCT 1.9; MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.9 (1983).

■ As further support for the interpretation that "another person" is intended to mean "another client," the comment to Rule 1.9 provides that "[a]fter termination of a client-lawyer relationship, a lawyer may not represent *another client* except in conformity with this Rule." N.H. R. PROF. CONDUCT 1.9 ABA model code comments (emphasis added). In addition, we note that had the drafters of Model Rule 1.9(a) intended to prohibit lawyers from pursuing their own personal interests in matters in which former clients had adverse interests, they could have done so with more explicit language. *Cf.* N.H. R. PROF. CONDUCT 1.7(b) (conflict exists where lawyer's responsibility to client may be materially limited by lawyer's own interests). We hold that "another person" in Rule 1.9(a) is synonymous with "another client" and does not encompass a lawyer's *pro se* activities. Accordingly, we hold that the respondent did not violate the Rule. Our interpretation of Rule 1.9(a), however, does not relieve lawyers of the duty of loyalty to former clients, or abrogate the attorney-client privilege.

Rule 1.9(b) provides:

"A lawyer who has formerly represented a person in a matter shall not thereafter: . . . (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."

The committee alleges that Wood violated this rule through his interview with the *Valley News* reporter and the subsequent publication on December 12, 1990. Wood contends that his comments in the *Valley News* were directed to generally known information, and that the information was not used to Heritage's disadvantage. We agree with the committee but base our holding on different portions of the article. The article provided:

"Blair Wood, a Hanover attorney who lives on Eastman Hill and who plans to mount 'a serious campaign to defeat the project,' cited a number of objections: a devastating effect on traffic on Eastman Hill Road; a tremendous amount of new lighting to the neighborhood; and damage to the area's wildlife habitat.

. . . .

Wood said that within the last year, after the developer had decided against a site near Exit 15, Heritage representatives came to his law firm—Stebbins Bradley Wood & Harvey—and asked the firm to represent them in their attempts to put a mall on the Exit 16 site. Wood, who didn't disclose the name of the developers, said his law firm didn't take the case because of his opposition to the project.

Wood said he thinks the developers want to bypass the efforts of a committee that will review the city's zoning map, because the committee might not agree with the developer's proposed zoning change and might not come up with any definite proposals by voting time in March.

Between now and March, Wood said, 'they've got a big selling job to do' to Lebanon residents.

'The burden will be on them to convince the people this is good for them.' He said the developers will promote the mall 'based on the mentality of more and bigger shopping, employment, and taxes' being paid to the city.

'To me it's a test of this community,' Wood continued. 'Do we want a community that's well planned? Pretty? Or are we what they think we are? Greedy? Materialistic?'"

The committee argues that Wood's reference to increased traffic and lighting, wildlife impacts, and that the developer would promote the mall on a theory of more taxes, employment and shopping, is information related to the representation because Cooper's November 21, 1990, memo to Heritage included references to these topics. We do not agree. Heritage retained Wood for his zoning expertise and because of his past success record. Wood, an experienced real estate attorney, did not need to refer to the specific proposal before the city in order to identify which disadvantages a developer would downplay, or which selling points would be emphasized when proposing the development of a regional mall. In our view, the references made to traffic and related impacts, and taxes and related benefits, are not related to Wood's representation of Heritage, but are commonly known effects of any large commercial development.

Nor are we persuaded that Wood was using information related to the representation when he opined that the developers would seek to bypass the city zoning map committee since a citizen's petition had already been filed to rezone the McQuade site. By filing the petition, which Wood learned of by checking with the Lebanon City Council,

Heritage indicated that its strategy was to seek a referendum vote on rezoning only one tax lot, instead of seeking to rezone every lot in the rural zone by trying to amend the zoning map.

■ Although we find information related to the representation was not used to the disadvantage of the former client in the above comments, we hold that Wood's references to the fact that Heritage representatives explored another site and that the firm of Stebbins, Bradley, Wood & Harvey refused to represent Heritage because of his opposition to the project are related to the representation and were used to Heritage's disadvantage. We recognize that Wood did not name the developer who explored a site near exit 16 of Interstate 89, but note that the context in which Wood's statements were made certainly gives the impression that it was Heritage who explored the alternate site. In addition, we are troubled by Wood's misrepresentation of the facts. He told the reporter that the firm refused to represent Heritage, when, in fact, the firm represented Heritage on this project for several months. We also look disfavorably on Wood's use of his law firm's prestige to Heritage's disadvantage by Wood's implication that the firm would have nothing to do with advising Heritage on developing a mall in Lebanon. These facts had not become generally known at the time the article was published. We therefore hold that the respondent violated Rule 1.9(b).

The committee alleges that Wood violated Rule 1.16(b) because his withdrawal from representing Heritage could not be accomplished without material adverse effect on Heritage's interests. Rule 1.16(b) provides that "[e]xcept [when a tribunal orders a lawyer to continue representation], a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client . . . ." In response, Wood contends that Rule 1.16(b) applies only to discretionary or permissive withdrawals, while under Rule 1.16(a), Wood and his firm were presented with a conflict that *mandated* withdrawal.

Rule 1.16(a) provides that except when a tribunal orders a lawyer to continue representation, "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the rules of professional conduct or other law . . . ." We agree that Wood's opposition to rezoning the property adjacent to his home, which arose when Heritage expanded its development plans into Lebanon, presented a conflict of interest under Rule 1.7.

■ Rule 1.7(b) provides: "A lawyer shall not represent a client if the representation of that client may be materially limited by the

lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests . . . ." Wood was presented with a situation in which his continued representation of Heritage would violate Rule 1.7. As such, Rule 1.16(a) mandated withdrawal from representing Heritage. Since Wood could no longer represent Heritage because of the conflict of interest, other members of his firm were imputedly disqualified under Rule 1.10. Accordingly, Wood and his firm were required to withdraw from representing Heritage under Rule 1.16(a), and we hold that Rule 1.16(b) is inapplicable.

The committee alleges that Wood violated Rule 1.16(d) by not taking steps reasonably practicable to protect Heritage's interests when he withdrew. This Rule provides:

> "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

The committee acknowledges that Wood took certain steps to protect Heritage's interests, including: giving reasonable notice of withdrawal; recommending new counsel; allowing time for employment of legal counsel; and transferring Heritage's papers and property to the new counsel. Under the committee's interpretation of Rule 1.16(d), Wood "should have maintained a *nominal* and passive attorney-client relationship thereby *postponing* full withdrawal until the risk of harm to the client had passed." In essence, the committee seeks an interpretation of Rule 1.16(d) that would require Wood to keep quiet after he withdrew from representation and not participate in the public debate over rezoning the McQuade property.

■ We think it inappropriate to require an attorney to maintain a "passive" or "nominal" representation of a client, especially in light of the mandate contained in Rule 1.3 requiring lawyers to diligently represent their clients. *Cf. Flint's Case*, 133 N.H. 685, 687–690, 582 A.2d 291, 292–93 (1990) (lawyer neglectfully represented clients and did not act as an advocate); *Fitzpatrick's Case*, 132 N.H. 211, 213, 566 A.2d 157, 158–59 (1989) (lawyer neglected legal matter and failed to diligently pursue matter). During oral argument, the committee took the position that in regard to Rule 1.16(d), Wood did everything that was required, except that he should have told Heritage that he

would publicly oppose rezoning the McQuade site. While this may have been a more prudent course of conduct for Wood to follow, we cannot say that it is clearly required under Rule 1.16(d). The ill the committee seeks to remedy is best left to an analysis under Rule 1.9.

█  The finding that the respondent violated Rule 1.9(b) triggers a finding that he also violated Rule 8.4(a). The respondent is hereby publicly censured for his violation of these Rules. Costs may be assessed upon a motion by the committee. *See* SUP. CT. R. 37(16); *Kelley's Case*, 137 N.H. 314, 320, 627 A.2d 597, 601 (1993).

*So ordered.*

JOHNSON J. did not sit; BROCK, C.J., concurred in part and dissented in part; the others concurred.

BROCK, C.J., concurring in part and dissenting in part: The court has determined that Attorney Wood violated only one of several provisions of the Rules relied upon by the professional conduct committee when it filed its petition recommending his public censure. In my view, this fact and the nature of the evidence supporting our determination that Rule 1.9(b) was violated by Attorney Wood differ so greatly from the original allegations of the committee that the appropriate sanction to be imposed in this matter is a reprimand.