Original
No. LD-92-006

CARPENITO'S CASE

December 9, 1994

*Castaldo & Malmberg, P.C.,* of Concord (*John A. Malmberg* on the brief and orally), for the committee on professional conduct.

*Upton, Sanders & Smith,* of Concord (*Russell F. Hilliard* on the brief and orally), for the respondent.

HORTON, J.   The Supreme Court Committee on Professional Conduct (committee) filed a petition with this court requesting that the respondent, James W. Carpenito, be suspended from the practice of law for a period of six months. On May 14, 1992, we appointed a Judicial Referee (*Bois,* J.) to conduct a hearing on the committee's petition. The referee found, by clear and convincing evidence, that the respondent violated New Hampshire Rules of Professional Conduct (Rules) 3.4(a), 4.1(a), and 8.4(a).

This matter arises out of a dispute over the dissolution of a partnership, the Brittany Electronics Company. The respondent represented one of the partners, Charles M. Trask, and Attorney H. Raymond Kellett, Jr., represented the other partner, John B. Ross. The partners maintained a bank account at Fleet Bank of New Hampshire with a balance of $46,686.98. Both attorneys wrote letters to Fleet Bank suggesting that no funds should be withdrawn from the account without the express approval of both Trask and Ross. Counsel for Fleet Bank informed the parties that the bank was going to close the account because the instructions given to the bank by the attorneys conflicted with the original account agreement. By letter dated January 24, 1991, the respondent requested that Fleet Bank

> liquidate the account in a disbursement check payable to: "H. Raymond Kellett, Esquire, and James W. Carpenito, Esquire, attorneys for the Brittany Electronic Co." Attorney Kellett and I have in the past agreed to dispositions of disputed sums by establishing similar escrows, and he is a copy correspondent to this letter.

On February, 7, 1991, a check was made payable to both attorneys and mailed to the respondent. The respondent endorsed his name and that of Kellett on the check in the belief that both signatures were necessary. He then gave the check to his office manager, instructing her to obtain a certificate of deposit in both his and Kellett's names at the Pelham Bank and Trust. The respondent did not have Kellett's authority to sign on his behalf.

On February 20, in superior court, the respondent informed Kellett that he had obtained a certificate of deposit in both their names at the Pelham Bank and Trust. Attorney Kellett and the respondent had agreed upon the basic concept of an escrow, but had never decided specifically how it would be executed. Kellett was surprised to learn of the certificate of deposit, as he had expected that the disposition of the funds would be discussed at the February 20 hearing. He protested the endorsement of his name without his authority. Kellett believed he faced a "fait

accompli," and that he had compromised his client, who was uncomfortable about the disposition of the funds. At that point, Kellett thought he could do nothing to remedy the situation other than request a copy of the certificate of deposit.

The respondent returned to his office that evening and discovered that his office manager had not yet obtained the certificate of deposit. The respondent did not contact Kellett to correct his prior statement that the certificate had already been opened. Instead, he obtained the certificate of deposit from the Pelham Bank and Trust on February 21.

By letter dated February 21, 1991, Kellett asked counsel for Fleet Bank to send him a copy of the bank's draft so that he might "check" its endorsement. On the same date, Kellett sent a letter of protest to the respondent. On February 22, Kellett called Fleet's counsel and notified her that the check had been deposited in the Pelham Bank and Trust and that he had not endorsed it. He filed a "stop payment request" and sent a letter to Fleet's counsel asking Fleet Bank to dishonor the check. Because it was too late to stop payment on the check, Fleet's counsel called the respondent, who informed her that the check had been deposited in the Pelham Bank and Trust and that he had signed both names on the check. At the bank's request, Kellett executed an "individual affidavit of forgery" and delivered it to the bank. On February 26, the Pelham Bank and Trust issued a check to "Fleet Bank—N.H. and H. Raymond Kellett, Esq. and James W. Carpenito, Esq. Attorney for the Brittany Electronic Company" for the full amount, and the check was deposited in the superior court.

The committee's petition alleged that Carpenito violated New Hampshire Rules of Professional Conduct 3.4(a), 4.1(a), 8.4(a), and 8.4(c). The referee ruled that the respondent violated Rules 3.4(a), 4.1(a), and 8.4(a), but found no violation of Rule 8.4(c). The respondent appeals, arguing that his conduct did not violate any of the Rules; the committee appeals the referee's finding that the respondent did not violate Rule 8.4(c). We hold that the respondent violated Rules 4.1(a) and 8.4(a) by failing to correct his statement to Kellett that the certificate of deposit had already been obtained at the Pelham Bank and Trust.

The standard of review for findings made by a judicial referee in attorney discipline proceedings is whether a reasonable person could reach the same conclusion as the referee based upon the evidence presented at the hearing. *Whelan's Case,* 136 N.H. 559, 561, 619 A.2d 571, 572 (1992). Rule 3.4 provides in relevant part: "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a

document or other material having potential evidentiary value." In ruling that the respondent violated Rule 3.4(a), the referee stated:

> The evidence is clear and convincing that the only discussions involving the temporary disposition of the fund was their deposit in an income bearing account. The clerk of court or other form of escrow was mentioned but no agreement arrived at. No evidence of authority to endorse the complainant's name is present, and respondent's assumption that he had that right is unfounded and unsupported.

■ The plain language of Rule 3.4(a) requires an unlawful alteration of material having potential evidentiary value. We do not find support in the record for the conclusion that the respondent unlawfully altered the check or that the check had potential evidentiary value. Although the respondent exercised poor judgment in endorsing the complainant's signature on the check, the referee found that the respondent was not guilty of legal forgery. An officer of the Pelham Bank and Trust testified that the transaction did not require an endorsement of the parties. Further, Rule 3.4(a) is designed to prevent attorneys from interfering with evidence. *See* N.H. R. PROF. CONDUCT 3.4 ABA model code comments. The record demonstrates that the respondent intended to effectuate the agreed upon escrow in endorsing Kellett's name, not alter potential evidence. Although we do not countenance such behavior, the respondent's endorsement of the check did not rise to the level of an unlawful alteration of potential evidence as required by Rule 3.4(a).

The referee also determined that the respondent violated Rule 4.1(a). As a preliminary matter, we address the respondent's argument that we should dismiss the Rule 4.1(a) violation because the committee did not specifically allege in its petition that the respondent's failure to correct his misstatement violated Rule 4.1(a). He cites our decision in *Wood's Case,* 137 N.H. 698, 701, 634 A.2d 1340, 1342 (1993), as support for his position. In *Wood's Case,* the committee's brief alleged that Wood's conduct violated Rules that were not cited in its petition. *Id.* By contrast, in this case, the petition alleged that the respondent's course of conduct violated Rule 4.1(a), placing the respondent on notice that he could be subject to discipline under this Rule. We now address this allegation.

Rule 4.1(a) provides: "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person." The referee found that the

respondent did not make a false statement when he indicated on February 20 at the superior court that he had endorsed the complainant's name to the check and converted the proceeds into a certificate of deposit. The respondent did make a false statement, however, when he learned that his office manager had not opened the certificate and he failed to correct his statement to Kellett. In making this determination, the referee relied upon the comment to Rule 4.1 that states:

> Making a false statement includes the failure to make a statement in circumstances in which nondisclosure is equivalent to making such a statement. Thus, where a lawyer has made a statement that the lawyer believed to be true when made but later discovers that the statement was not true, in some circumstances failure to correct the statement is equivalent to making a statement that is false.

N.H. R. PROF. CONDUCT 4.1 ABA model code comments.

The respondent argues that the referee improperly relied on the comment to find that he violated Rule 4.1(a). We disagree. The introductory note outlining the scope of the Rules states: "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule." Although the text of each rule is authoritative, the comments are intended as guides to interpretation. *See, e.g., Wood's Case,* 137 N.H. at 703, 634 A.2d at 1343. The respondent's failure to correct a material statement that he believed to be true, but later found out to be false, constituted a violation of Rule 4.1(a) in this case. The referee found that the respondent "knew that Mr. Kellett objected to [the check] having been signed by the respondent and disapproved of the entire transaction." When the respondent returned to his office on February 20 and discovered that the certificate of deposit had not been opened, as he had represented, he had a duty to correct his prior misstatement. Instead, he opened the certificate of deposit, knowing that Kellett disapproved of the transaction. We agree with the referee that, under these circumstances, the respondent's failure to correct his misstatement to Kellett violated Rule 4.1(a). The finding that the respondent violated Rule 4.1 triggers a finding that he also violated Rule 8.4(a). *See Wood's Case,* 137 N.H. at 707, 634 A.2d at 1345.

The committee argues that the referee's finding of a violation of Rule 4.1(a) also requires an automatic finding that the respondent violated Rule 8.4(c). Rule 8.4(c) provides: "It is

professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The referee recommended dismissing the 8.4(c) violation because he found no conduct involving dishonesty, fraud, deceit, or misrepresentation. The committee maintains that the respondent's failure to correct his earlier statement in violation of Rule 4.1(a) constitutes a misrepresentation under Rule 8.4(c). We disagree. An intentional misrepresentation requires a misstatement of fact "for the purpose of inducing another to act or to refrain from action in reliance upon it." RESTATEMENT (SECOND) OF TORTS § 525 (1976); *see, e.g., Welts' Case,* 136 N.H. 588, 591–92, 620 A.2d 1017, 1018–19 (1993). The record does not compel a finding that the respondent failed to correct his earlier statement in order to induce Kellett or Kellett's client to act or refrain from acting in reliance upon it.

█ Finding that the respondent violated Rules 4.1(a) and 8.4(a), we must now consider the appropriate sanction. The committee requests a six-month suspension; the respondent maintains that mitigating circumstances justify only the imposition of a private reprimand. The purpose of the court's disciplinary power is to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent future misconduct. *Welts' Case,* 136 N.H. at 592, 620 A.2d at 1019.

The referee ruled:

> [T]he violations of the respondent, presumed to be a knowledgeable attorney, were serious and not merely "imprudent" as suggested. He has no previous complaints and it is believed, however, that the prayed for suspension is, under the circumstances, excessive.

> It is recommended that Mr. Carpenito be subject to a public reprimand and all costs incurred in investigating and prosecuting this matter.

██ We conclude that public censure will serve the stated purposes of the disciplinary rules. The respondent's lack of a prior disciplinary record and the absence of selfish motives are mitigating factors that weigh against the committee's recommendation of suspension. *See id.* at 593, 620 A.2d at 1019–20. A private reprimand, however, would not adequately protect the integrity of the legal profession, nor would it deter future attorney misconduct. In order to maintain public confidence in the bar and trust among members of the bar, attorneys must be

honest in their dealings and careful to correct any material misstatements they make.

The respondent is publicly censured and assessed all expenses incurred by the committee and bar counsel in the investigation and enforcement of this matter. *See* SUP. CT. R. 37(16).

*So ordered.*

All concurred.