Original
Nos. LD-94-001
    LD-95-003
    LD-95-005

HENDERSON'S CASE

May 6, 1997

*Braiterman Law Offices*, of Concord (*David J. Braiterman* on the brief and orally), for the committee on professional conduct.

*Lloyd N. Henderson, pro se*, filed no brief; by leave of the court, orally.

HORTON, J. The Supreme Court Committee on Professional Conduct (committee) petitioned this court for the disbarment of the

respondent, Lloyd N. Henderson. The Judicial Referee (*Contas*, J.) assigned to conduct a hearing on the petition found by clear and convincing evidence that the respondent had violated Rules of Professional Conduct (Rules) 8.4(a) and 8.4(c). The referee made no recommendation on the committee's request for the respondent's disbarment. We affirm the referee's findings and order disbarment.

The respondent was admitted to the New Hampshire bar in 1973. Between January 1985 and May 1993, the committee issued six private letters of reprimand to the respondent. Specifically, the committee reprimanded the respondent on the merits of matters, for failure to cooperate with the committee, for failure to respond to the requests of the committee, and for knowing failure to promptly respond to lawful demands from a disciplinary authority. This court suspended him from the practice of law for three months in March 1988 for neglect of a client's interests. *See Henderson's Case*, 130 N.H. 313, 316, 538 A.2d 1222, 1224 (1988).

Following the committee's initiation of a petition for public censure against the respondent in September 1993, this court by order concluded that the respondent's answer admitted sufficient facts to find violations of Rules 8.1(b) and 8.4(a). In response the respondent entered into a stipulation in which he acknowledged his misconduct and agreed to submit to censure if this court adopted the stipulation.

In December 1993, a panel of the committee held a hearing on a complaint that the respondent had failed to record a deed in a timely and effective manner. The hearing panel found, by clear and convincing evidence, that the respondent had violated numerous provisions of the Rules of Professional Conduct; consequently, in early 1994, the committee initiated a petition against respondent for a one-year suspension from the practice of law. A referee heard the evidence and rendered a decision on the merits recommending the suspension.

In February 1995, the committee filed a separate petition for the respondent's disbarment. By order dated June 12, 1995, this court suspended the respondent for an indefinite period of time and deferred consideration of discipline in the public censure and one-year suspension petitions pending resolution of the present disbarment petition.

Following hearing on the disbarment petition, the referee found, by clear and convincing evidence, the following facts. On August 3, 1992, at approximately 5:45 a.m., the respondent telephoned the home of Robert J. Bagloe and his wife, Pamela, with whom he was acquainted. The respondent told Robert Bagloe he was seeking to

borrow $3,000 immediately and he needed to be somewhere in a hurry or he would be jailed. The respondent needed the money due to a court order that he make payment pursuant to a settlement agreement or serve thirty days in the Hillsborough County House of Correction for contempt. The Bagloes told the respondent they would lend him the money and to come to their home. When he appeared at the Bagloe home at approximately 7:30 a.m., the respondent presented a prepared promissory note secured by an assignment of an account receivable due to his law office in the amount of $3,200 from John S. Deming, administrator of the estate of Edith B. Deming and executor under the will of Spencer F. Deming. The note, dated August 3, 1992, stated a maturity of September 15, 1992, and provided that "failure to make said payment within 15 days after it becomes due shall result in the imposition of a late charge of 5% per month on the unpaid balance."

Thereafter Mr. Bagloe attempted to contact the respondent regarding payment of the promissory note but received no response. Mr. Bagloe retained an attorney to make inquiries regarding the note and the Deming estates. A letter was mailed to John S. Deming, who had no knowledge of the note. In April 1993, Mr. Bagloe sent the respondent a letter requesting payment in the amount of $4,387.50, and stating he would file suit to recover the money if necessary. Mr. Bagloe eventually commenced an action against the respondent and prevailed, but the respondent filed a petition in bankruptcy prior to satisfaction of the judgment. On December 14, 1994, Mr. Bagloe sent a letter of complaint to the committee.

The referee found, based on John Deming's testimony, that Deming knew the respondent had been hired by his father, Spencer Deming, to handle his mother's estate. When John Deming became executor of his father's estate, he assumed the respondent would do the necessary probate work on both estates. Deming tried for several years to contact the respondent so that the final accounts of the estates could be filed. When problems arose with the Internal Revenue Service over back taxes owed by the estates and Deming was unable to reach the respondent, he secured the services of an accountant in Massachusetts to prepare the first and final accounts.

The referee further found that the respondent failed to appear in probate court for scheduled hearings concerning the estates until threatened with contempt. The respondent never attempted to contact John Deming during the approximately four years Deming was the executor of his father's estate. He never discussed fees with Deming, except to present him with a bill in the amount of $570 for

out-of-pocket expenses incurred for both estates on the date the final accounts were filed. The respondent never billed Deming, nor attempted to collect any money from him. The respondent was not listed as a creditor in either of the final accounts and did not list his legal fees as an expense of administration of the estates as required by RSA chapter 554.

The respondent testified that he was not acting in his capacity as an attorney when he received the money from the Bagloes and denied making any misrepresentations in connection with the loan. He alleged that he was entitled to fees from the Deming estates exceeding $3,200. He admitted assigning all accounts receivable to a lending institution prior to obtaining the loan from the Bagloes, but he testified that his records were destroyed in a fire at his home and he never pledged the Deming account to the bank. The respondent acknowledged that he never sent a bill to Deming and did not list his fees in the first and final accounts. Although the respondent testified that he did not ask Deming for fees when the final accounts were filed because he did not want Deming to have to liquidate stocks, the referee found that the final account showed more than $14,000 in national banks.

Finally, the referee relied on the testimony of John E. Laboe, a New Hampshire attorney, who had reviewed the final accounts of the Deming estates. Laboe testified that no attorney's fees or expenses were listed for administration of the estates, as required by RSA chapter 554.

In his report issued on September 22, 1995, the referee stated he could not

> accept the claims as related by the [respondent], nor is there a distinction between misconduct of a personal nature and misconduct occurring in the course of an attorney-client relationship. Attorneys are required to conduct themselves at all times in conformity with standards imposed upon members of the bar for the right to practice law. . . . The Referee finds that by clear and convincing evidence, [the respondent] has violated these standards and that he misrepresented all aspects of the transaction to the Bagloes.

The referee found by clear and convincing evidence that the respondent had violated Rules 8.4(a) and 8.4(c). The rules state that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct" or "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

N.H. R. PROF. CONDUCT 8.4(a), (c). In reviewing a judicial referee's decision in an attorney discipline case, we must determine whether a reasonable person could come to the same conclusion as the referee based on the evidence presented at the hearing. *Carpenito's Case*, 139 N.H. 168, 171, 651 A.2d 1, 3 (1994).

It is undisputed that on the morning the respondent sought to borrow $3,000 from the Bagloes he conveyed a promissory note, which was secured by an assignment of the amount purportedly due his law office for work on the Deming estates, as collateral for the loan. The evidence before the referee, however, supports the view that the respondent did not have any legal claim against the Deming estates for his services. John Deming testified that after his father's death in 1986, he had no contact with the respondent for approximately four years. Deming believed he had satisfied his financial obligation to the respondent after the final accounts of the wills were filed in October 1990 and he paid the respondent's out-of-pocket expenses. Deming did not recall seeing a bill for the respondent's fee when the final accounts were filed. Deming also testified that since October 1990 he had not had any oral or written communications whatsoever from the respondent.

Other evidence also supported these facts. The respondent testified he never sent Deming a written bill for work on the estates. The respondent could not recall any specific attempts on his part to contact Deming or to collect the debt. Even after the respondent assigned the receivable to the Bagloes in August 1992, he did not speak with or write to Deming to request payment for work he had done several years before. Nor did the respondent include his attorney's fees in the final accounts of either estate, as required by RSA chapter 554.

Although the respondent submitted no brief, he did appear for oral argument. At that time, he contended he made no misrepresentations to induce the Bagloes to lend him the money, and that they agreed to lend him the $3,000 before he made any representations whatsoever.

"An intentional misrepresentation requires a misstatement of fact for the purpose of inducing another to act or to refrain from action in reliance upon it." *Basbanes' Case*, 141 N.H. 1, 6, 676 A.2d 93, 96 (1996) (quotation omitted). We find the record provides sufficient evidence for a reasonable person to conclude that the respondent misrepresented aspects of the loan transaction to Mr. Bagloe and that Bagloe substantially relied upon the respondent's misrepresentations when he extended the loan.

Mr. Bagloe testified that he and his wife agreed to lend the respondent the money, but then told him they needed to discuss the

transaction. When the respondent appeared at the Bagloe home, he presented Mr. Bagloe with a promissory note which, on its face, appeared to be secured. In response to Bagloe's concerns about prompt repayment, the respondent assured him that there would not be any problem and the loan should be repaid in thirty to forty-five days. Bagloe testified that when he questioned the respondent about the receivable due his law office, the respondent told him that it was an actual receivable from a matter that would be resolved very soon, and that the money would be available to repay the loan. At that point Bagloe decided to go through with the loan transaction, and he wrote the check to the respondent.

The record demonstrates that despite the Bagloes' initial agreement to extend the loan, they had lingering concerns about the transaction. The respondent sought to induce them to lend him the money by presenting the promissory note and making statements as to repayment and the nature of the collateral. Mr. Bagloe ultimately relied on these misrepresentations in deciding to complete the transaction.

We hold that a reasonable person reviewing the above evidence could find by clear and convincing evidence that the respondent violated Rules 8.4(a) and (c). The respondent's conduct involved misrepresentations as to material aspects of the loan transaction with the Bagloes. Although the respondent presented conflicting testimony at the hearing, "[c]redibility as well as weight given to testimony [at a disbarment proceeding] is a question of fact for the [trial] court and if the findings could reasonably be made on all evidence they must stand." *Wehringer's Case*, 130 N.H. 707, 716-17, 547 A.2d 252, 257 (1988) (quotation omitted).

We have also considered the previous petitions seeking public censure and a one-year suspension. As to the petition for public censure, the parties stipulated to professional misconduct and censure as the appropriate sanction, so no factual issue is before this court. A careful review of the record of the hearing on the suspension petition convinces us that a reasonable person could conclude, as did the referee, that the committee proved by clear and convincing evidence that the respondent violated the Rules of Professional Conduct. *See Drucker's Case*, 133 N.H. 326, 329-30, 577 A.2d 1198, 1200 (1990).

█ The committee contends that disbarment is the appropriate sanction for misrepresentation given the respondent's substantial history of misconduct. Disbarment may be an appropriate sanction for the "protection of the public and the preservation of the integrity of the legal profession." SUP. CT. R. 37(13)(f). To deter-

mine the appropriateness of disbarment as a sanction, we examine the respondent's behavior to gauge the gravity of his unprofessional conduct. *See Astles' Case,* 134 N.H. 602, 603, 594 A.2d 167, 168 (1991). We then consider mitigating circumstances disclosed by the record. *Basbanes' Case,* 141 N.H. at 6, 676 A.2d at 96.

■■ The present petition involves the respondent's misrepresentations in the context of a personal financial transaction. We have previously recognized that misrepresentation in such matters may subject an attorney to discipline, *see Astle's Case,* 134 N.H. at 604-07, 594 A.2d at 169-71, and conduct involving dishonesty presents perhaps the most egregious violation of an attorney's duty, *see Basbanes' Case,* 141 N.H. at 6-7, 676 A.2d at 96. In the past, the respondent has exhibited considerable inattention to his clients' interests and near total disregard for the committee's requests. Efforts by the committee to alert the respondent to deficiencies in his conduct — including six private reprimands and a three-month suspension — have proved fruitless. We are convinced that the current violations are not merely isolated indiscretions, but part of a pattern of conduct which has become harmful to the legal profession as a whole. The respondent's "numerous violations of the Rules of Professional Conduct cover a wide scope of behavior that the Rules seek to prohibit and render him unfit to be a member of the bar of this State." *Flint's Case,* 133 N.H. 685, 690, 582 A.2d 291, 293-94 (1990).

It is apparent to this court that any reverence the respondent may once have held for the legal profession, and his personal commitment to strive to live by the high standard required for membership in that profession, has eroded with the passage of time. We cannot allow the respondent to continue to undermine the standards of professional conduct in this State. With that in mind, our responsibility is clear.

Lloyd N. Henderson is hereby disbarred. Further, he is ordered to reimburse the committee for the costs of investigating and prosecuting the petitions for public censure, one-year suspension, and disbarment. *See* SUP. CT. R. 37(16).

*So ordered.*

All concurred.