Original
No. LD-97-007

COHEN'S CASE

December 3, 1998

*Abramson, Reis, Brown & Dugan*, of Manchester (*Kenneth C. Brown* and *Jared R. Green* on the brief, and *Mr. Brown* orally), for the committee on professional conduct.

*Gerald M. Cohen*, of Boston, Massachusetts, by brief and orally, *pro se*.

PER CURIAM. The Supreme Court Committee on Professional Conduct (committee) filed a petition with this court requesting that the respondent, Gerald M. Cohen, be suspended from the practice of law for a period of one year. We appointed a Judicial Referee (*Dunn, J.*) to conduct a hearing on the committee's petition. The referee found, by clear and convincing evidence, that the respondent violated New Hampshire Rules of Professional Conduct (Rules) 1.15(a)(1), 8.4(a), and 8.4(c). We agree that the respondent committed several violations of Rule 8.4(c), find that those violations warrant disbarment, and therefore need not address the other violations.

The referee found that the respondent was retained by James Oriani to represent him in connection with his divorce from Virginia Albanese (formerly Virginia Oriani). During the divorce proceed-

ings, the parties agreed to cooperate toward a joint filing of bankruptcy, and Ms. Albanese agreed to have the respondent represent both her and Mr. Oriani for that purpose. In December 1992, the parties met with the respondent to discuss the proposed bankruptcy. Mr. Oriani paid the respondent a retainer of $910.00. The respondent was aware that Ms. Albanese planned to reimburse Mr. Oriani for one-half of that amount. The parties completed in handwritten form the necessary schedules for a Chapter 7 bankruptcy filing and signed a blank signature form and blank acknowledgment form. Ms. Albanese expected that the bankruptcy petition would be filed shortly after the meeting.

On March 1, 1993, the superior court approved the parties' divorce decree. Later that month, the respondent prepared typed bankruptcy forms and handwrote the date "March 16, 1993" next to the parties' signatures on the forms. The respondent did not, however, file the bankruptcy petition.

On or about March 24, 1993, Ms. Albanese telephoned the respondent. During the conversation, she inquired about the bankruptcy petition. The respondent stated that the petition had been filed.

On May 27, 1993, Ms. Albanese met with another attorney and learned both that she probably did not need to file for bankruptcy and that no petition had yet been filed with the bankruptcy court. Ms. Albanese thereafter twice called the respondent's office. As she was unable to speak with the respondent, she left messages with the respondent's secretary indicating that she did not want the bankruptcy petition to be filed and that she wanted her money back.

In early June, Ms. Albanese spoke with the respondent and told him that she did not want the petition filed and that she wanted her money back. The respondent indicated that it was too late for such a request.

Thereafter, on June 15, 1993, the respondent attempted to file a joint bankruptcy petition with the United States Bankruptcy Court for the District of New Hampshire. The filing was rejected because the signature page was not the correct form. The respondent obtained the correct form, and on June 16 the respondent signed the names "James Oriani" and "Virginia Oriani" to the form in a manner that tried to emulate their actual signatures. This was done without the parties' knowledge or consent and despite Ms. Albanese's express instruction not to file the petition. The respondent mailed the form to the bankruptcy court, and the bankruptcy petition was entered on the court docket on June 25, 1993.

In July 1993, Ms. Albanese received a notice from the bankruptcy court of a creditors' meeting in her case. She obtained a copy of her file from the court and noticed that somebody else had signed her name and her ex-husband's name on the petition. She contacted the United States Trustee's Office and informed an Assistant United States Trustee that the bankruptcy petition had been filed against her instructions and that the signature was not hers.

The Assistant United States Trustee filed a complaint against the respondent with the committee. In the course of the disciplinary proceedings, in answer to an interrogatory question as to whether he had ever been sued for any reason (other than two suits specifically mentioned in the question), the respondent answered, "No." In fact, the respondent had been a party to at least eleven other law suits.

The referee concluded that the respondent committed several violations of Rule 8.4(c), which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The referee found, *inter alia*, that the respondent violated this rule by falsely stating to Ms. Albanese that he had filed her bankruptcy petition when he had not done so, by signing her name to the bankruptcy petition without her consent, by filing the bankruptcy petition after Ms. Albanese instructed him not to do so, and by falsely answering bar counsel's interrogatory.

When we review the referee's factual findings, "our only function is to determine whether a reasonable person could have reached the same decision as the referee on the basis of the evidence before him." *Basbanes' Case*, 141 N.H. 1, 4, 676 A.2d 93, 95 (1996) (quotation omitted). We find ample evidence in the record to support the factual findings set forth above. Although the respondent argues that his testimony conflicted with that of other witnesses relied upon by the referee, "any conflicts as might be found in the testimony, questions about the credibility of witnesses, and the weight to be given to testimony are questions to be resolved by the referee." *Budnitz' Case*, 139 N.H. 489, 491, 658 A.2d 1197, 1198 (1995) (quotation omitted).

Although our role in reviewing the referee's factual findings is limited, we retain the ultimate authority to determine the appropriate sanction for violation of the Rules. *See Wood's Case*, 137 N.H. 698, 701, 634 A.2d 1340, 1342 (1993); SUP. CT. R. 37(13)(f). "The purpose of this court's disciplinary power is to protect the public, maintain public confidence in the bar, preserve the integrity of the

legal profession, and prevent similar conduct in the future." *Doherty's Case*, 142 N.H. 446, 450, 703 A.2d 261, 264 (1997) (quotation omitted).

■ "The privilege of practicing law does not come without the concomitant responsibility of truth, candor and honesty. . . . [B]ecause no single transgression reflects more negatively on the legal profession than a lie, attorney misconduct involving dishonesty . . . justifies disbarment." *Nardi's Case*, 142 N.H. 602, 606, 705 A.2d 1199, 1200 (1998) (quotations and brackets omitted). In light of the respondent's repeated dishonest conduct, which included his attempt to emulate the handwriting of Mr. Oriani and Ms. Albanese when he signed their names to the bankruptcy petition without their consent, we conclude that the appropriate sanction in this case is disbarment. *See id.*; *Basbanes' Case*, 141 N.H. at 8, 676 A.2d at 97.

Accordingly, the respondent is hereby disbarred and is ordered to reimburse the committee for its expenses in investigating and prosecuting this case. *See* SUP. CT. R. 37(16).

*So ordered.*

All concurred.