Original
No. LD-99-002

## COX'S CASE

Argued: September 18, 2002
Opinion Issued: November 26, 2002

*Law Office of Rodney L. Stark, P.A.*, of Manchester (*Rodney L. Stark* on the brief and orally), for the committee on professional conduct.

*McLane, Graf, Raulerson & Middleton, Professional Association*, of Manchester (*Jack B. Middleton* and *Scott H. Harris* on the brief, and *Mr. Middleton* orally), for the respondent.

BRODERICK, J. The Supreme Court Committee on Professional Conduct (committee) issued a letter of reprimand to the respondent, Paul R. Cox, for violating Rules 1.4(a), 1.15(b) and 8.4(a) of the New Hampshire Rules of Professional Conduct. *See* SUP. CT. R. 37(3)(c)(5). The respondent appealed the reprimand to this court and requested that the case be referred to a judicial referee. After conducting a *de novo* hearing, the Referee (*Horton*, J.) found by clear and convincing evidence that the respondent had violated Rules 1.4(a) and 8.4(a), but not Rule 1.15(b), and recommended that a letter of reprimand be issued. We adopt the referee's recommended sanction.

The complaint against the respondent arose from his successful representation of Richard Averill in a workers' compensation case against

Dreher-Holloway. *See Averill v. Dreher-Holloway*, 134 N.H. 469 (1991). The case was resolved in late 1993, after many years of litigation. In January 1994, the respondent sent Averill a letter stating that "the Dreher-Holloway matter [was] paid in full and nothing further [would] be due." However, in June 1995, Averill received a bill for $257.30, which puzzled him and prompted him to review the documents that the respondent had sent him throughout the course of the litigation.

The record reflects that numerous financial transactions took place during the representation. In December 1986, Averill sent the respondent a check, as requested, for $500 "on account." In 1992, Averill was awarded $215,494.91 in workers' compensation benefits. In June of that year, the respondent received a check from the insurance company for $9,774.67, representing interest owed to Averill on back benefits. He forwarded the check to Averill with a request that he endorse it and return it for allocation as follows: $5,000 to be held in escrow; $3,156.77 for reimbursement of expenses incurred between January 1, 1986, and June 17, 1992; and the remainder credited to Averill. The respondent sent Averill a check for $218.10 on July 22, 1992, and a check for $1,399.80 on July 23, 1992, accompanied by a letter stating that the two checks represented the funds remaining from the interest check.

On July 16, 1992, the superior court awarded the respondent $70,000 in fees and $3,010 in expenses for the period between April 14, 1987, and March 2, 1992. This was paid directly to the respondent by Dreher-Holloway's insurance carrier. In December 1993, the respondent negotiated a lump-sum settlement on behalf of Averill in the amount of $115,000, from which the respondent received $23,000 for attorney's fees.

Because the settlement agreement provided that Averill would pay all outstanding medical bills, he sent the respondent a check for $11,000. From these funds, the respondent sent $3,000 to Seacoast Mental Health Associates, which represented a negotiated balance of $4,000 less a $1,000 fee agreed upon by the provider for his collection services, and $7,500 to Dartmouth Hitchcock Psychiatric Association, which represented a negotiated balance of $9,900 less a $2,400 collection fee. On January 26, 1994, the respondent informed Averill of these payments in a letter, which was accompanied by copies of the correspondence to the medical providers and a memo explaining the allocation of the $11,000 as well as $5,193.24 that was in the "Trust Savings." The memo indicated that the respondent took the $500 remaining from Averill's $11,000 for "Services for collection on medical" and allocated the $5,193.24 as follows: $2,228.38 to attorney Jim Schulte, who had done legal work for Averill in another matter; $316.53 to the respondent for "Expenses"; and $2,648.33 to the respondent

for "Collection on medical." Although it was not explicitly spelled out in the memo, the amounts retained for "collection on medical" ($3,148.33) represented the collection fees that the respondent had negotiated with Seacoast Mental Health Associates and Dartmouth Hitchcock Psychiatric Association.

On September 6, 1996, after completing his file review, Averill called the respondent's office to resolve some billing questions. The respondent was not available to speak to him at that time. In a second phone conversation with the respondent's secretary on September 18, Averill was asked to send a list of specific items of inquiry to the respondent. Averill then requested a meeting with the respondent, which was scheduled for October 2. Averill arrived at the meeting without a well-defined set of questions but made general complaints about the billing procedures, specifically regarding the $500 retainer sent to the respondent early in the case, the disposition of the $9,774.67 interest payment, the payment of his medical bills and the fees the respondent charged for this service. The respondent had no advance notice of these inquiries and was unable to provide specific answers. When their three-hour meeting concluded, however, he agreed to review the file and get back to Averill within a month.

On October 28, Averill wrote to the respondent, stating, "I realize that I am somewhat early in my request for some kind of answer to my questions to you on Oct. 2, but I am anxious to get [this] over with. If you can provide any help I would appreciate it very much." On November 6, 1996, the respondent telephoned Averill and told him that he had reviewed the file and had found nothing wrong. He did, however, offer to return $2,648.33, which Averill rejected. On November 10, Averill wrote to the respondent specifically requesting an accounting for the funds held by the respondent from the 1992 interest check. The respondent did not respond.

In late November or early December 1996, Averill retained counsel to pursue his inquiries against the respondent. By letter dated December 3, 1996, Averill's attorney informed the respondent of his involvement. In the letter, he also proposed a settlement and indicated that if a settlement could not be reached, litigation would follow. In subsequent letters, he continued to request financial information on behalf of Averill, including "office records concerning [Averill's trust account], a copy of all deposit slips and checks written against this account and a copy of all bank statements reflecting deposits and withdrawals from this account." On January 29, 1997, he prepared a writ of summons naming the respondent and the respondent's law firm as defendants. He delayed filing the writ, however, pending the exploration of mediation and coverage by the

respondent's malpractice carrier. The writ was filed in superior court in May 1997. On June 3, the respondent's counsel filed an appearance. Averill's counsel then sought production of his client's file and an accounting of all trust accounts involving Averill, to which the respondent successfully objected on the basis that the requests were overbroad. Although the respondent provided some information and made conditional offers to allow counsel to examine the file, he did not make the entire original file available until this court's decision in *Averill v. Cox*, 145 N.H. 328 (2000).

Upon reviewing the file, Averill's counsel concluded that the $3,156.77 retained by the respondent from the interest check in June 1992 and the $3,010 awarded by the superior court in July 1992 represented double expense credits. The respondent acknowledged this error and reimbursed Averill. The file review by counsel also revealed that the payments made to Seacoast Mental Health Associates and Dartmouth Hitchcock Psychiatric Association in January 1994 were not in fact due. Averill recovered those sums from the providers, but the collection fees are still in dispute.

Following a limited hearing on Averill's complaint, the committee found that from September 6, 1996, through June 3, 1997, the respondent failed to comply with Averill's reasonable requests for information in violation of Rule 1.4(a), and failed to promptly deliver property that Averill was entitled to receive in violation of Rule 1.15(b). Subsequently, a two-day *de novo* hearing was conducted by the referee, who recommended dismissing the Rule 1.15(b) violation but concluded that the respondent had violated Rule 1.4(a) and, accordingly, Rule 8.4(a) (violating the Rules of Professional Conduct). The referee found by clear and convincing evidence that, although the respondent's representation of Averill was "of first quality" and that the results achieved were "very impressive," Averill's requests for accounting information were reasonable and the respondent failed to comply with them. According to the referee,

> [t]he accounting was questionable and presented in an unclear form. There were errors in expense allocation and medical provider reimbursement that could have been resolved earlier by appropriate disclosure. Although the respondent and his counsel gave some information to Mr. Averill, it was not of such quantity or quality that would comply with Mr. Averill's reasonable requests.

The referee also found that the respondent failed to follow the minimum accounting requirements under Supreme Court Rule 50(2). However, since

the respondent was not charged with violating that rule, the referee did not consider it as a basis for sanctions, nor will we.

The respondent challenges the referee's decision. The committee does not challenge the referee's finding as to Rule 1.15(b). Therefore, the only issues before us are whether the respondent violated Rules 1.4(a) and 8.4(a) and, if so, what sanctions to impose.

In reviewing the referee's factual findings, our only function is to determine whether a reasonable person could have reached the same decision on the basis of the evidence before the referee. *Cohen's Case*, 143 N.H. 169, 171 (1998). Rule 1.4(a) provides: "A lawyer shall keep a client reasonably informed regarding the status of a matter and promptly comply with reasonable requests for information." The committee charged the respondent only with violating the second part of the rule—failure to comply with reasonable requests for information.

The respondent argues that Rule 1.4(a) is designed to assure that clients make prudent, well-informed decisions concerning ongoing matters and, thus, is not applicable here since there was no ongoing matter in which the respondent was representing Averill. We conclude that the rule applies to the circumstances of this case.

"The duty to communicate derives in part from the common law duty imposed on all agents, including lawyers, as well as from the lawyer's fiduciary duty of utmost good faith to the client." ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT 31:502 (1997) (citation omitted). As a fiduciary, "[a]n attorney is under an absolute duty to give [the] client a full, detailed, and accurate account of all money and property which has been received and handled by the attorney, and must justify all transactions and dealings concerning them." 7A C.J.S. *Attorney & Client* § 247 (1980). Other jurisdictions require an attorney to render an accounting upon the client's request. *See People v. Murray*, 912 P.2d 554, 555 (Colo. 1996); *State ex rel. Okl. Bar Ass'n v. Watson*, 897 P.2d 246, 254 (Okla. 1994); MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.15 (1983). Although New Hampshire has not adopted such a specific rule, we have employed Rule 1.4(a) to sanction a lawyer who failed to comply with a client's request for detailed information and justification concerning her bill, failed to reasonably keep her informed about the amount of the bill, and failed to provide an itemized record justifying the bill. *Kalled's Case*, 135 N.H. 557, 560 (1992); *see also In re Bivens*, 724 So. 2d 198, 199-200 (La. 1998) (concluding that attorney violated Rule 1.4 by failing to render an accounting upon request). We conclude that Averill's requests for billing information fifteen months after receiving a bill from the respondent were

reasonable and that the respondent was required to comply with those requests under Rule 1.4(a).

The respondent further argues that Rule 1.4(a) does not apply to requests for information from a former client who has instituted legal proceedings against his former lawyer. Although the referee did not define the time frame within which he found the violations to have occurred, he concluded that the duties owed under Rules 1.4(a) and 8.4(a) are non-delegable and, thus, must be followed even when a lawyer acts through counsel. From this, we glean that the referee found the violations to extend beyond the point that the respondent retained counsel. We agree that the duties were non-delegable. However, we need not decide whether they continued after Averill's counsel began advancing his interests with threats of litigation because the record supports the referee's finding that the respondent failed to comply with Averill's requests for an accounting between September 6, 1996, when Averill placed the first telephone call to the respondent's office, and December 3, 1996, when Averill's counsel wrote to the respondent.

The respondent asserts that the documentation provided to Averill throughout the course of the litigation, including the June 1992 and January 1994 correspondence, was sufficient to satisfy Averill's requests. We disagree. The record indicates that, although the respondent made an effort to comply with Averill's requests, he failed to provide a full, detailed, and accurate account of all money that he handled for Averill. The information that was provided did not present the accounting in a comprehensive or complete manner, nor did it include detailed statements of the fees taken. It appears that Averill's requests could have been easily resolved had the respondent maintained appropriate trust accounting.

Although our role in reviewing the referee's factual findings is limited, we retain the ultimate authority to determine the appropriate sanction for a violation of the Rules. *Cohen's Case*, 143 N.H. at 171. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession and prevent similar conduct in the future. *Id.* at 171-72. Every case is to be judged on its own facts, taking into account mitigating circumstances. *Flint's Case*, 133 N.H. 685, 689-90 (1990). Although we have not adopted the ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS, we look to them for guidance. "Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client." ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS § 4.63 (1991).

As mitigating factors, we recognize that the respondent is a well-respected attorney with an unblemished record and that he achieved a substantial award for Averill in the workers' compensation case. In addition, we note that the committee has not alleged deceit or dishonesty; thus we ascribe no selfish or dishonest motive to the respondent. Finally, the respondent attempted to satisfy Averill's requests but was unable to do so apparently because of inadequate record keeping. Nonetheless, the duty to provide a full, detailed, and accurate accounting of a client's money is absolute. Accordingly, we order that a letter of reprimand be issued to the respondent. In addition, we direct the respondent to reimburse the committee for the cost of investigating and prosecuting this matter. *See* SUP. CT. R. 37(16). The costs, however, should be reduced by any expenses incurred by the Rule 1.15 issue. *See Bruzga's Case*, 145 N.H. 62, 73 (2000). We remand to the referee to determine the costs.

*So ordered.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.